STATE, *ex rel.* SOUTH BREVARD DRAINAGE DISTRICT, v. MILLARD B. SMITH, Judge, Ninth Judicial Circuit.

170 So. 440.

Division A.

Opinion Filed October 30, 1936.

*George P. Garrett,* for Relator;

*Giles J. Patterson,* for Respondent.

DAVIS, J.—The case made by the pleadings in this case may be summarized as follows:

On February 29, 1936, South Brevard Drainage District, Brevard County, Florida, a Florida drainage district, instituted in the Circuit Court for Brevard County, Florida, a suit for foreclosure of uniform acreage back taxes levied in 1927 and remaining yet uncollected. The suit was brought against all of the several tracts of land in said District on

which said uniform acreage back taxes were levied and with regard to which the levy remained unpaid. On the same day notice of *lis pendens* was filed, and an order of publication was issued in said cause addressed to the said certain tracts defendant. This order was duly published and posted.

On the return day set forth in the order of publication, namely, April 6, 1936, a certificate of the Clerk was filed, certifying to the facts of issuance, posting and publication of said order of publication, and, pursuant to a praecipe for decree *pro confesso* filed by the plaintiff district, a decree *pro confesso* was then entered by the Clerk. On the 16th of April, 1936, the South Brevard Drainage District moved for a final decree in favor of the District against the several delinquent tracts of land, in accordance with the terms of Chapter 1473, C. G. L., 1120 R. G. S. The Circuit Judge declined to enter this final decree.

Thereupon this original proceeding in mandamus was instituted in the Supreme Court of Florida by the State of Florida on the relation of the South Brevard Drainage District against the respondent Circuit Judge to require him to enter said final decree. An alternative writ issued, to which the respondent has filed a return, setting up that he did not enter the decree moved for because he did not consider that he had jurisdiction in said foreclosure proceeding for two reasons:

(1) The provisions of Chapter 1473, C. G. L., 1120 R. G. S., require the Board to institute such a suit for foreclosure in the corporate name of the District within twelve months after April first of the year for which the levy is made.

(2) The Circuit Judge construes Chapter 1473 C. G. L., 1120 R. G. S., not to provide for a proceeding strictly *in rem* against the land, but to require service of process by

personal service or order of publication upon the individual owners or claimants of the said several tracts involved by name.

Relator has filed a motion to quash and demurrer addressed to said return, and a ruling thereon is the subject matter now before this Court.

We think the present case may be decided upon a discussion of the narrower question involved in the second ground of refusal of the respondent Circuit Judge to act: "What kind of proceeding is provided for in Section 1473, C. G. L., 1120 R. G. S. (Section 23, Chapter 6458, Acts 1913, as amended) authorizing drainage tax liens to be enforced by a suit in chancery in the corporate name of the drainage district against any land or lands upon which the drainage tax has not been paid—is it a suit wholly *in rem* or merely *quasi in rem?*"

The South Brevard Drainage District was organized under the Florida General Drainage Law, Chapter 6458, Acts of 1913, which is the original general drainage law of the State. The original law is said to have been patterned after the so-called "Model Drainage District Act" originating in Missouri and subsequently generally adopted in the Middle Western States, South Carolina and elsewhere. The original Act has since been amended in 1921 and 1923, one result of the amendments being the present Section 1473, C. G. L., 1120 R. G. S.

A comparison of present Section 1473 C. G. L., 1120 R. G. S., shows that the intent of the amendments made to the original section of the 1913 Act was to set up a foreclosure of drainage tax liens analogous to that prevailing in the foreclosure of mortgages, so as to make the resultant foreclosure sale a judicial one that would protect the purchaser's title from collateral attack, thereby enabling the

Drainage District to more readily resell the foreclosed lands, if purchased by it, and thus obtain funds with which to meet the district's obligations. Another purpose of the Act was to give more security to taxpayer by requiring the judicial process of the proceedings, whether actual or constructive, to conform to the provisions of law controlling the chancery procedure for foreclosure of mortgages.

The applicable judicial process in drainage lien foreclosure proceedings under Section 1473 C. G. L., 1120 R. G. S., is therefore a summons in chancery, or an order for constructive service by publication, as the situation of the defendants named in the case may authorize or demand. The original language of the section, "except as herein provided," accordingly now has reference solely to the "pleadings, proceedings, practice and sales" and not to the requirement of process, nor to the mode of effectuating process in drainage tax lien foreclosure cases brought under that section.

This is not to hold, however, that the proceeding is not one *quasi in rem*. A proceeding *quasi in rem* is applied to any action between parties where the direct object is to reach and dispose of, or to adjudicate the title or status of, property owned by the parties, or of some interest claimed by them, and duly put in issue by the allegations of the pleadings therein. 1 Am. Jur. Actions, par. 46, page 437; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. Rep. 557, 33 L. Ed. 918; Lantry v. Parker, 37 Neb. 353, 55 N. W. Rep. 962.

A proceeding wholly *in rem* in a strict sense is one taken directly against property, having for its object the disposition of such property by authority of the law, without reference to the particular title of individual claimants thereto who become bound by the disposition of the prop-

erty where the authority to proceed *in rem* is lawfully exercised and the law providing for it is strictly followed in every essential particular. See: 1 R. C. L. par. 13, pages 328-330; 1 American Jurisprudence, Actions, par. 45, page 436; 1 Corpus Juris Secundum, Actions, par. 52, pages 1148-1150.

The relator's motion to quash the respondent's return to the alternative writ of mandamus is granted as to the fourth ground thereof. It is overruled and held good as a return setting up as legal ground for failure of respondent to further judicially proceed with respect to the litigation mentioned in the command, the objection that relator is without right to so demand, until he has pursued the statutory requirements as to process under Section 1473 C. G. L., 1120 R. G. S., as in and by this opinion construed and held applicable to the underlying litigation to which this proceeding is ancillary and in the nature of a *procedendo*.

Motion to quash return overruled with limitations as stated in opinion and relator thereupon given leave to join issue on return, if advised, within ten days. In default of such joinder of issue final judgment on the return quashing the alternative writ of mandamus and dismissing the proceeding shall be entered by the Clerk at relator's cost.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.