**STATE, ex rel. HALLOWES, State Attorney v. A QUANTITY OF BOOKS.**
No. 66-3574.

Circuit Court, Duval County.
August 2, 1966.

William A. Hallowes, III, State Attorney, John F. Gaillard, Assistant State Attorney, and John W. Ragsdale, Jr., Assistant State Attorney, for plaintiff.

FRANK H. ELMORE, Circuit Judge.

*Memorandum opinion and final decree:* On June 21, 1966 a complaint was filed in this court which reads as follows —

The Plaintiff, State of Florida, upon the relation of William A. Hallowes, 3rd, as State Attorney of the Fourth Judicial Circuit, Duval County, Florida, brings this suit and says:

1. The jurisdiction of this Court is invoked under Section 847.011 (7), Florida Statutes, wherein the State Attorney is vested with the authority to file in the Circuit Courts of the State of Florida a complaint seeking an injunction and restraining order to prevent a threatened violation of Chapter 847, concerning the possession, sale

or distribution of obscene material. The aforesaid William A. Hallowes, 3rd is the duly elected and qualified State Attorney of the Fourth Judicial Circuit of Florida.

2. The Defendants are a quantity of books transported into Duval County, Florida for the purpose of retail distribution and sale within said County, and delivered for said purpose to Jacob M. Rachleff d/b/a Jake's News Stand. The said Jacob M. Rachleff reported the receipt of the said quantity of books to the Duval County Sheriff's Office and asked that the said Sheriff's Office take possession of said quantity of books for disposition under the Florida Statutes as to the obscene nature thereof.

3. Thereafter the said Sheriff's office of Duval County, Florida received possession of the said quantity of books from the said Jacob M. Rachleff and possession thereof is presently temporarily vested in the Sheriff of Duval County, Florida.

4. The aforesaid Chapter 847, Florida Statutes, makes it unlawful to knowingly sell or offer to sell or to possess with intent to sell or to advertise in any manner any obscene, lewd, lascivious, filthy, indecent, immoral, sadistic or masochistic book, magazine, periodical, pictures, drawings or other such material, and further provides that the test as to whether or not a book, magazine, picture, or other such material is obscene is as follows:

"Whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

5. The said defendant book, *Passion Hangover*, is obscene as defined by Chapter 847, Florida Statutes, and the threatened possession, sale, offering for sale and advertising of the said *Passion Hangover* constitutes an immediate and irreparable threat of injury to the welfare and morals of citizens residing in the community.

[Paragraphs 6 through 59 are identical except for the title of the book and, therefore, are omitted.]

60. The aforementioned defendant books are included in composite Exhibit "A" and annexed to the said complaint.

WHEREFORE, The Plaintiff prays:

1. This Honorable Court enter, without notice, and order restraining and enjoining the possession, sale, offer for sale and advertising of the aforesaid defendant books until a final hearing and determination of this matter.

2. Upon final hearing of this matter, this Honorable Court enter a final decree adjudging each of the aforesaid defendant books to be obscene, lewd, lascivious, filthy, indecent, immoral, sadistic and/or masochistic as provided in the aforesaid Chapter 847, Florida Statutes.

3. Upon final hearing of this matter, this Honorable Court enter a final decree making said injunction and restraining order permanent and, further, directing the Honorable Dale Carson, Sheriff, Duval County, Florida, to destroy any and all copies of said defendant books

and file herein a certificate showing compliance with said final decree, in conformity with Section 847.011 (7) (d), Florida Statutes.

4. And for such other relief that this Honorable Court may deem just and proper.

WILLIAM A. HALLOWES, 3rd
State Attorney, In and For the
Fourth Circuit, Duval County,
Florida
JOHN F. GAILLARD
Assistant State Attorney, In
and For the Fourth Judicial
Circuit, Duval County, Florida
JOHN W. RAGSDALE, JR.
Assistant State Attorney, In
and For the Fourth Judicial
Circuit, Duval County, Florida

A hearing was held by the court on July 7, 1966 for the limited purpose of inquiring into the manner by which the "Sheriff's Office of Duval County, Florida" obtained possession of the books as alleged in paragraphs 2 and 3 of the complaint. The plaintiff was represented by John W. Ragsdale, Jr. and John F. Gaillard, Assistant State Attorneys. Testimony was given by Jacob M. Rachleff, witness called by the court who said, *inter alia*, that the seized books "are on consignment," and Detective Sergeant James L. Pfeiffer, a witness called by the plaintiff. The cause was set for July 22, 1966 to hear final argument for the plaintiff but plaintiff elected not to appear. There was no appearance for the defendant books on either date.

No summons or other process has been issued or served in this case except for the witness subpoena to Rachleff.

The relief prayed for by the plaintiff is (1) an injunction, (2) a declaration adjudging the books to be obscene under chapter 847, Florida Statutes, and (3) destruction of the books.

### Proceeding in rem

This is a proceeding in rem.

"A 'proceeding in rem' in a strict sense is one taken directly against property, having for its object the disposition of such property by authority of law, without reference to particular title of individual claimants thereto who become bound by the disposition of the property where the authority to proceed in rem is lawfully exercised and the law providing for it is strictly followed in every essential particular." State v. Smith, Fla. 170 So. 440.

Does the complaint measure up to those requirements? Has the authority to proceed been lawfully exercised? Has the law providing for it been strictly followed in every essential particular?

## Injunction

Although chapter 847, Florida Statutes, is primarily a criminal statute it does provide also for injunctive relief.

"It is a maxim that equity acts in personan and not in rem." Guinta v. Lo Re, Fla., 31 So.2d 704.

"Injunction is distinctly an equitable remedy, and the well-established principle underlying equity jurisdiction that it is exercised in personam, and not in rem, is fully applicable. The remedy is strictly in personam, and the decree operates and is enforceable against the individual and not against property, except where by statutory authorization the decree is so framed as to act on property." 28 Am. Jur., Injunctions, p. 492.

Against what person is the injunction sought in this case? To whom shall "sufficient notice of the application" under provisions of §847.011 (7) (b) be given? What person is "entitled to a trial of the issues under provisions of §847.011 (7) (c)? Fifty-five books? Has a book eyes that it may read what is written against it? Has it ears that it may hear the words of accusation? Has it "hands, organs, . . . senses, affections, passions?" Has it a tongue that it may speak out in its defense?

There may be no injunction in this case.

## Declaration

Chapter 847, Florida Statutes, has no provisions for prior adversary determination of obscenity before seizure and none was made in this case. Since there may be no injunction and it is not alleged that anyone has been accused or convicted of violating that chapter, any declaration in this case would have to be one authorized by the Declaratory Judgment Act, chapter 87, Florida Statutes.

That chapter invests the circuit courts of the state with authority and original jurisdiction "to declare rights, status and other equitable or legal relations . . ." The requirements of such a proceeding are clearly and concisely set forth in the opinion of the Supreme Court of Florida in May v. Holley, 59 So.2d 636 at 639 —

"Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is [sic] some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation *and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.* These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts." (Italics added.)

Section 87.10, Florida Statutes, provides— "When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." The owners of the books, whoever they may be, having a property right in them, would certainly be prejudiced by a declaration that the books are obscene within the definition of chapter 847, Florida Statutes.

Does the complaint allege that "there is [sic] some person or persons who have, or reasonably may have an actual present, adverse, and antagonistic interest in the subject matter, either in fact or law?" It does not. Without antagonistic parties, there can be no justiciable controversy. Without a justiciable controversy, there can be no declaration. "The absence of such antagonistic parties, whose interest would be affected, justifies the dismissal of the suit." 7 Florida Law and Practice, Declaratory Judgments, §6.

### Confiscation and destruction

Destruction is provided for after a finding of violation of §847.011 (1) (a) by subsection (6) thereof, and by §847.02 after conviction or, by subsection (7) (b) thereof, after entry of a final decree of injunction. In other words, unless there be a trial and adjudication that material has been possessed in violation of the law, or a final decree of injunction issued after

sufficient notice to the party restrained, there can be no confiscation or destruction under chapter 847. Neither requirement has been met in the case *sub judice.*

### *Were the books lawfully seized?*

Evidence given at the hearing on July 7th is inconclusive as to whether there was consent to search and seizure by the person or persons in possession of the books but it supports an inference that some duress was used and that consent to seizure, if given, was not entirely voluntary, as was alleged in paragraph 2 of the complaint. Testimony given on July 7th discloses that deputy sheriffs of Duval County took possession of not just one copy of each defendant book but of all copies thereof, and of some other publications as well, estimated to be almost sixteen thousand. This *ex parte* and gratuitous determination of obscenity without sanction of law negates the allegation of paragraph 2 of the complaint that the books were taken "for disposition under the Florida Statutes as to the obscene nature thereof." How otherwise construe the impounding of the entire stock, including those in warehouse, when one copy of each would have sufficed for judicial determination *vel non* of obscenity?

But it is unnecessary to determine whether or not there was a waiver of constitutional rights for no affected person is before the court. The question is, rather, whether the seizure and impounding of the books themselves was valid. No search warrant was issued or served. No person was arrested by any officer. Section 847.03, Florida Statutes. Fifth Circuit Judge John Minor Wisdom, sitting in the U. S. District Court for the Eastern District of Louisiana, in the case of In re Louisiana News Company, 187 F. Supp. 241 (1960), held that no seizure of allegedly obscene magazines, however well meaning the purpose may be, is valid if it is the product of an arbitrary, unreasonable rule of thumb. The court directed the return of the materials seized and restrained the superintendent of police and the district attorney from acting similarly in the future. In the case of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723 (1964), the Supreme Court of the United States held that a state's seizure of allegedly obscene paperback novels, without a prior adversary determination of their obscenity, and a subsequent court order directing the sheriff to stand ready to destroy them are unconstitutional. See also Marcus v. Search Warrant, 367 U.S. 717, 736, 6 L. Ed. 2d 1127, 1138, 1139, 81 S. Ct. 1708, in which the Supreme Court said —

"But there is no doubt that an effective restraint — indeed the most effective restraint possible — was imposed prior to hearing on the circulation of the publications in this case, because all copies on which the police could lay their hands were physically removed from the newsstands and from the premises of the wholesale distributor."

and Freedman v. Maryland, 380 U.S. 51, 58, 13 L. Ed. 2d 649, 654, 85 S. Ct. 734 —

"The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint."

Under the allegations of the complaint the "Sheriff's office of Duval County, Florida" was given no authority by chapter 847, Florida Statutes, to take possession of the books "for disposition under the Florida Statutes as to the obscene nature thereof."

"Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws existence of the government will be imperiled if it fails to obey the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example."

Brandeis, J., dissenting, in Olmstead v. United States, 277 U.S. 438, 485, 72 L. Ed. 944, 959, 960.

### Conclusion

The complaint, projected on the screen of law, stands revealed, bare, without a shred of the habiliments of authority to cover it. It constitutes an attempt at deprivation of property without due process of law contrary to the bill of rights of the constitution of the United States of America, and the declaration of rights of the constitution of the state of Florida.

"Personal liberty and private property are fundamental rights in this country. The very purpose of law is to protect those rights. Any unlawful interference with them by false statement, acts of coercion, intimidation, malice, or covert implications that threaten injury or mischief to them may be enjoined." Terrell, J., in Paramount Enterprises v. Mitchell, Fla., 140 So. 328, 332-3.

The warning of the Supreme Court in the very case (Roth v. United States, 354 U.S. 476, 488, 1 L. Ed. 2d 1498, 1509, 77 S. Ct. 1304) which established the definition of obscenity used in chapter 847, Florida Statutes, must not go unheeded — ". . . the door barring federal and state intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests."

Were the technique employed in this case to be used against a daily newspaper, say the Florida Times-Union or the Jacksonville Journal, it could result in the seizure, without prior adversary judicial determination of the matter, of not just a single copy but of the entire press run of one day's edition because of an alleged offending story or even an advertisement of a book, play, or movie. And such arbitrary action could, absent judicial restraint sought and granted, be repeated each day so long as the newspaper continued to publish that material.[1]

---

1. Fantastic? Not when zealots usurp authority as public censors and make and execute their own laws. See e.g., *The Jacksonville Journal*, July 18, 21, 1966 —

NASHVILLE, Tenn. (AP) A police sergeant who once gave tickets to two meter maids for illegal parking has shut down the movie "Who's Afraid of Virginia Woolf?" in Nashville.

"I represent the thinking of the good people of this town," said Sgt. Fred Cobb, a soft-spoken Baptist deacon and Sunday school teacher. "I just don't feel like they would approve of this type of film for young people to see."

After sitting through the film Saturday night, Cobb returned last night with a warrant for the arrest of theatre manger Lawrence Martin Kerrigan, 55. Kerrigan later was released on $50 bond to appear today in City Court.

Cobb confiscated one reel of the film and then mounted the stage to tell about 700 moviegoers why the picture had been stopped. They got their money back.

Cobb's warrant said the film, which stars Elizabeth Taylor and Richard Burton, violated a city ordinance banning profanity on the screen.

"It's a disgrace," said Cobb. "I couldn't rest easy without doing something about it. It seems to tear down everything that is decent and worthwhile in our society.

"It used God's name in vain several times and tried to belittle modern-day evangelists such as Billy Graham and others."

Mr. Justice Stewart said in his dissenting opinion in Ginzburg v. United States, 16 L. Ed. 2d 31, 86 S. Ct. 942 (1966) —

"Censorship reflects a society's lack of confidence in itself. Long ago those who wrote our First Amendment charted a different course. They believed a society can be truly strong only when it is truly free. In the realm of expression they put their faith, for better or for worse, in the enlightened choice of the people, free from the interference of a policeman's intrusive thumb or a judge's heavy hand. So it is that the Constitution protects coarse expression as well as refined, and vulgarity no less than elegance. A book worthless to me may convey something of value to my neighbor. In the free society to which our Constitution has committed us, it is for each to choose for himself.

\* \* \*

"In upholding and enforcing the Bill of Rights, this Court has no power to pick or to choose, when we lose sight of that fixed star of constitutional adjudication, we lose our way. For then we forsake a government of law and are left with government by Big Brother."

---

Theatres showing the movie are required by the producer to advertise that no one under 18 will be admitted unless accompanied by a parent.

"I don't know why any one man should want to set himself up as a censoring board," E. D. Martin, co-owner of Martin Theatres, told the Nashville Tennesseean from Columbus, Ga. The movie opened Friday at a Martin theatre here.

"It is one of the greatest pictures of the year," he said. "It is an artistic achievement and the true meaning of the picture is not in the language."

The movie, adapted from the Broadway play by Edward Albee, recounts a long wild party given by a New England professor and his wife for a new faculty member and his wife.

NASHVILLE, Tenn. (AP) "Who's Afraid of Virginia Wolf?" played to a packed house last night after a court dismissed a complaint by Police Sgt. Fred Cobb that it was obscene.

Lawrence Kerrigan, manager of the theatre that showed the film, filed a $50,000 damage suit against Cobb yesterday within hours after Kerrigan was released from charges arising when he showed the movie.

And government by Big Brother means the ever-watchful, never-sleeping eye of bureaucratic tyranny prying with accusatory design into the private affairs of every citizen.

## Final decree

Possession of "A Quantity of Books" by the "Sheriff's office of Duval County, Florida" being unlawful, and the court lacking jurisdiction to grant either injunctive or declaratory relief, or to order destruction of the *res*, it is ordered, adjudged and decreed —

(1)  The relief prayed for by the plaintiff is denied.

(2)  The sheriff of this county shall forthwith return to the persons from whom they were obtained, all books described by title in the complaint now in his possession and those annexed to the complaint as composite exhibit "A", as well as all other publications, if any, obtained in the same manner. He shall file a certificate of his compliance.

(3)  The complaint is dismissed with prejudice.

---

Sgt. Cobb saw the film last Saturday, returned to the theatre Sunday night, closing the showing, arrested Kerrigan and confiscated the film. Police later returned the film when it was determined they had no authority to take it.

Judge Andrew Doyle dismissed Cobb's obscenity charge against Kerrigan on the grounds it was brought under an ordinance that applies only to live performances not to movies.

Cobb said he was "a little bit disappointed and a little bit downhearted" after being served with a summons for the damage suit. But he added: "I plan to go right on enforcing the law the best I know how." Sgt. Cobb, a deacon in a Baptist church, said he made the arrest because he "just couldn't rest easy without doing something about it".*

*"The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning, but without understanding." Brandeis, J., op. cit. supra, 479; 957.