848 So.2d 345 (2003)
SEVEN HILLS, INC., Adam Smith Enterprises, Inc., City of Altamonte Springs, Foundation to Fight Corruption, Inc. and Jimmy Hatcher, Appellants,
v.
W. Wallace BENTLEY, Sr., et al, Appellees.
Nos. 1D01-5081, 1D01-5086, 1D01-5114, 1D01-5118.
District Court of Appeal of Florida, First District.
February 12, 2003.
*347 Diane D. Tremor, P.A. and Chris H. Bentley, P.A., of Rose, Sundstrom & Bentley, LLP, Tallahassee, for Seven Hills, Inc. and Adam Smith Enterprises, Inc.
Carole Joy Barice, Esquire and James A. Fowler, Esquire, of Fowler, Barice, Feeney, & O'Quinn, P.A., Orlando, for City of Altamonte Springs.
Jimmy Hatcher, in proper person, Bristol, for Foundation to Fight Corruption.
Guyte P. McCord, III, Esq. of McCord, Bubsey, Ketchum & Donohue, LLP, Tallahassee and Loren E. Levy, Esq. and Larry E. Levy, Esq. of The Levy Firm, Tallahassee, for W. Wallace Bentley, Sr., et al.; William H. Hughes, III, Esq. of Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tallahassee, for Interstate Fibernet, Inc.; and Sylvia H. Walbolt, Esq., Robert Pass, Esq., Lannie D. Hough, Jr., E. Kelly Bittick, Jr., and Carlton Fields, P.A., Tallahassee, for Florida Power Corporation and Progress Telecommunications Corporation.
LEWIS, J.
In this consolidated action, appellants, Seven Hills, Inc., Adam Smith Enterprises, Inc., and City of Altamonte Springs, challenge the trial court's approval of a class settlement in which all appellants are members. The settlement resolved the class claims that appellee Florida Power Corporation ("FPC") exceeded the scope of its written easements over approximately 6,293 parcels of land located throughout the State of Florida by installing fiber optic communications lines on its easements and by permitting other entities to use the communications capacity.
Appellants raise three issues on appeal. Appellants first argue that the trial court lacked subject matter jurisdiction in this action with regard to all real property located outside of the Second Judicial Circuit, thereby rendering the class settlement a nullity. We affirm on this issue and hold that because the underlying major question in this action did not involve title to the class members' property, the trial court did have subject matter jurisdiction. In their second argument, appellants contend that the trial court erred in certifying a settlement class under Florida Rule of Civil Procedure 1.220(b)(1)(A). Within this argument, appellants also contend that the trial court erred in making the settlement class mandatory. Although we conclude that the trial court erred in certifying the settlement class under rule 1.220(b)(1)(A), we find such error to be harmless and affirm as to the certification under Florida Rule of Civil Procedure 1.220(b)(2) and Florida Rule of Civil Procedure 1.220(b)(3). However, because the trial court relied solely on rule 1.220(b)(1)(A) in making the class mandatory, we reverse the Final Judgment and remand for further proceedings. Finally, appellants argue that the trial court erred *348 in approving the class settlement. Because we reverse and remand the Final Judgment, we decline to address this third issue. As to appellants Foundation to Fight Corruption and Jimmy Hatcher, we affirm without further discussion the trial court's denial of their Motions to Intervene as appellants failed to object timely to the settlement and as Jimmy Hatcher was not a class member. Therefore, appellants' arguments are not cognizable on appeal.
FPC began acquiring its easements as early as the 1950s under its charter for electric transmission and distribution. The typical form of the easements granted FPC, its successors and assigns, the right:
to construct, operate and maintain for such period of time as it may use the same or until the use thereof is abandoned, a single pole, H-frame and/or tower line for the transmission and distribution of electricity, including necessary communication and other wires, poles, guys, anchors, ground connections, attachments, fixtures, equipment and accessories, desirable in connection therewith over, upon, and across the following described land ... together with the right to patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories, including the right to increase or decrease the number of wires and voltage, together with all the rights and privileges reasonably necessary or convenient for the enjoyment or use thereof for the purposes above described,....
Upon their realization that FPC had installed fiber optic strands in its electric lines on its easements in twenty-three counties, a group of plaintiffs, who owned land within the Second Judicial Circuit, filed a lawsuit against appellees, averring that, "[t]he allegations which follow concern the [d]efendants' improper use of electric transmission easements for the leasing and licensing to third persons of unrelated, non-electric general fiber optic telecommunications." In their complaint, the plaintiffs, who requested class certification pursuant to Florida Rule of Civil Procedure 1.220, sought a declaratory judgment establishing the rights of the parties pursuant to the easements and injunctive relief. The complaint also included a trespass count and an unlawful entry and unlawful detainer count. In their amended complaint, the plaintiffs added an unjust enrichment cause of action and a fourth defendant, Progress Telecommunications Corporation ("PTC"), which is wholly owned by the same parent corporation that owns FPC. Following PTC's incorporation in 1998, FPC transferred ownership of its fiber optic communications system to PTC.
On January 7, 2000, following the parties' unsuccessful first attempt at mediation, the trial court certified a mandatory class pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), finding that "[a] class action is appropriate in the instant case because prosecution of separate claims by individual members of the class would create a risk of inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the defendant." While the defendants' appeal regarding the class certification was pending before this Court, the parties were referred back to mediation, which lasted three days and resulted in the settlement agreement. This Court then stayed further appellate proceedings and relinquished its jurisdiction to the trial court to consider settlement class certification and approval of the class settlement.
The FPC settlement class includes all persons, except the owners of public and railroad rights-of-way occupied or used by FPC or PTC, who, on February 1, 2001, *349 owned in fee or owned a fee interest in real property located in Florida, as reflected in the public ownership records, over which property FPC owns an easement that does not expressly provide for the installation and use of fiber optic communications wire(s), and which is traversed by a right-of-way containing fiber optic wire(s) as of December 31, 2000. The agreement provides for a mandatory class in order to resolve the class members' declaratory and injunctive relief claims. However, class members were permitted to opt out of the damages portion of the class to pursue their own damages within a one-year safe harbor period without having to prove FPC's liability. For those class members who chose to remain in the damages portion of the class, FPC will pay each member $12,000 per linear mile (or $2.27 per foot) of FPC's easement right-of-way, which is to escalate at a rate of 6.425% per year from June 9, 2000, through the date that the final judgment becomes final. Pursuant to the agreement, FPC assumed the class members' responsibility of identifying and notifying the entire class.
Regarding telecommunications use, the settlement agreement declares that FPC has the right to use all of its easements for general telecommunications use, including the licensing or leasing of fiber optic wires or capacity or providing other telecommunications services to telecommunications providers and customers. The agreement sets forth that there shall be no restriction on the number of telecommunications wires utilized by appellees on the easements. These rights will continue even if electricity is no longer being transmitted over the electric transmission or distribution lines unless FPC and/or its successors and assigns legally abandon the easements. Yet, no new additional ground or subsurface structure may be erected for telecommunications use unrelated to electric transmission or distribution. The trial court preliminarily approved the settlement in May 2000, and required that notice of the settlement be provided to the class members. FPC subsequently notified all class members by mail and through publication. Out of 7,069 class members, only 134 opted out of the damages portion of the class, including appellants.
During the settlement fairness hearing, which was conducted on June 22, June 28, and November 13, 2001, Barry Diskin, an expert witness who is a real estate appraiser and Florida State University professor, opined that $12,000 per mile was a reasonable valuation. Harry Purnell, a practicing attorney, opined that the attorney's fees were reasonable as well. While appellants cross-examined appellees' witnesses, none of the appellants offered any evidence to refute such testimony.
Appellants, Seven Hills, Inc., Adam Smith Enterprises, Inc., and City of Altamonte Springs, filed timely objections to the settlement. Following lengthy arguments by all sides, the trial court entered its Final Judgment Approving Class Settlement and Setting Attorney's Fees on November 16, 2001. Regarding the propriety of class treatment, the trial court certified the settlement class under rules 1.220(b)(1)(A) and (b)(2) for purposes of declaratory and injunctive relief claims and under rule 1.220(b)(3) for purposes of damages claims. In paragraph nineteen of the Final Judgment, the trial court, in discussing the mandatory nature of the class, set forth:
19. "Mandatory Class." As reflected by the Court's Order Certifying Class, and as further underscored by the evidence presented at the fairness hearing, the Settlement Class is properly maintained as a "mandatory" class under Rule 1.220(b)(1)(A). Based on the uncontradicted *350 evidence presented at the fairness hearing, permitting class members to exclude themselves from the Settlement Class (or opt out) in order to seek declaratory and/or injunctive relief... would expose Defendants to potentially inconsistent adjudications and incompatible standards of conduct that would be contrary to the very purpose of a(b)(1)(A) class.... [T]he purpose of the mandatory class is to avoid the disruption to the [communications] system that would be caused by such a break [in the system]. Consistent with its initial Order Certifying Class, the Court finds that the mandatory class under Rule 1.220(b)(1)(A) is proper as to the declaratory portion of the Class Settlement. The Settlement Class is also properly maintained as an "opt out" class under Rule 1.220(b)(3) with regards to class members' Claims for Damages.
The trial court granted appellants' Motions to Intervene in the Final Judgment as well. This appeal followed.
Appellants' first issue on appeal, whether a class action settlement serves as an appropriate procedural vehicle to render an interpretation of several thousand easements throughout the state, is an issue of first impression in Florida. Appellants argue on appeal that because the local action rule is applicable to this action, the trial court lacked subject matter jurisdiction with regard to all real property located outside of the Second Judicial Circuit. A court's subject matter jurisdiction, or its power to hear a controversy, is generally tested by the good-faith allegations in the complaint and is not dependent upon the ultimate disposition of the lawsuit. Calhoun v. N.H. Ins. Co., 354 So.2d 882, 883 (Fla.1978). Subject matter jurisdiction, which arises only as a matter of law, cannot be created by waiver, acquiescence or agreement of the parties, by error or inadvertence of the parties or their counsel, or by the exercise of the power of the court. Fla. Exp. Tobacco Co. v. Dep't of Revenue, 510 So.2d 936, 943 (Fla. 1st DCA 1987). As such, we review this issue de novo. See Warren ex rel. Brassell v. K-Mart Corp., 765 So.2d 235, 236 (Fla. 1st DCA 2000).
While the circuit court has jurisdiction in all cases in equity and in law involving title to property, where the cause of action is in rem, the court has subject matter jurisdiction only if it has both jurisdictional power to adjudicate the class of cases to which the cause belongs and jurisdictional authority over the land which is the subject matter of the controversy. State, Dep't of Natural Res. v. Antioch Univ., 533 So.2d 869, 872 (Fla. 1st DCA 1988). If the cause of action has the object of requiring the court to act directly on property or on the title to property, it is an in rem action. Id.; see also State ex rel. S. Brevard Drainage Dist. v. Smith, 126 Fla. 72, 170 So. 440, 441 (1936) (holding that a proceeding in rem is one taken against property, having for its object the disposition of property). We have previously held that the local action rule, which governs subject matter jurisdiction, provides that where land lies outside a circuit court's territorial jurisdiction and the purpose of an action is to determine the question of title to the land, the action is local to the circuit in which the land lies. Antioch Univ., 533 So.2d at 872. To determine whether the presence of real property in an action renders the action subject to the local action rule, the case's underlying major question must be determined. Id.
For instance, in Antioch University, Antioch, a residual beneficiary of an estate, brought an action against the state to seek a declaratory judgment that the state had violated conditions of the deed, thereby causing the property to revert back to Antioch in fee simple. Id. at 871. Antioch *351 also sought to quiet title in the property. Id. In holding that the trial court erred in retaining jurisdiction over the complaint and remanding the case to the trial court having territorial jurisdiction over the property, we concluded that the underlying major question was whether Antioch, as a result of the state's breach, held fee simple title to the exclusion of the current titleholder, rendering the local action rule applicable. Id. at 873. Cf. Royal v. Parado, 462 So.2d 849, 853-54 (Fla. 1st DCA 1985) (holding that because the appellee's action in seeking the equitable rescission of a deed was not instituted primarily to seek transfer of title to the property in dispute, the local action rule was not applicable).
Here, the class representatives sought a determination of whether or not FPC's easements encompassed fiber optic use and the subsequent leasing of such. This is apparent from the complaint, which set forth, "[t]he allegations which follow concern the [d]efendants' improper use of electric transmission easements for the leasing or licensing to third parties of unrelated, non-electric general fiber optic telecommunications." (emphasis added). Appellants cite the supreme court's case of Lakeland Ideal Farm & Drainage District v. Mitchell, [97 Fla. 890,] 122 So. 516, 518 (Fla.1929), for the proposition that a trespass action rests primarily upon the complainant's ownership of land and, thus, is local in nature. However, we find Mitchell to be distinguishable from the instant case because the supreme court in Mitchell stated, "[w]here, however, as here, a single cause of action is presented, in which a present and continuing trespass upon real estate is the sole basis of the suit and a determination of ownership is actually or potentially involved as a major issue .... Such an action is necessarily local in its nature,...." Id. at 518 (emphasis added). Here, the class representatives alleged five causes of action in their amended complaint, including trespass. Although trespass was alleged, we do not find that the underlying major question in this lawsuit dealt with title to the class members' property.
Furthermore, the trespass to land of which the class representatives complained was not the physical installation of fiber optic cable. The main thrust of their complaint concerned the subsequent allocation or subletting of transmission rights. The alleged tort may well have been accomplished by executing documents in an office far from any affected parcel. See generally Goedmakers v. Goedmakers, 520 So.2d 575, 578-80 (Fla.1988); Bd. of Pub. Instruction v. First Nat'l Bank, 111 Fla. 4, 143 So. 738, 741 (1932) ("[A]ction was transitory where the transaction on which it was founded might have taken place anywhere...."); McMullen v. McMullen, 122 So.2d 626, 630 (Fla. 2d DCA 1960) (holding suit for specific performance of contract for sale of land was a transitory action).
Appellants also contend that the local action rule is applicable to this action because the necessary result of the judgment sought was that one party gained or the other lost an interest in real estate, which rendered this action one involving title to real property. See In re Weiss' Estate, 106 So.2d 411, 415 (Fla.1958). However, this argument is misplaced, because if this action had proceeded to trial on the merits, the existing easements would have remained intact as the class representatives merely sought an interpretation as to what uses the easements permitted. In addition, the third parties who were granted a license to utilize FPC's fiber optic capacity would not have lost an interest in the class members' property as a license confers no interest in land. See Dupont v. Whiteside, 721 So.2d 1259, 1263 (Fla. 5th DCA 1998). Accordingly, because title was not the underlying *352 major question in this action, and because the necessary result of the Final Judgment did not cause one of the parties to gain or lose an interest in real estate, the local action rule is inapplicable. Therefore, we hold that the trial court did have subject matter jurisdiction.
In their second issue on appeal, appellants argue that the trial court erred in certifying a mandatory settlement class pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A). We review the issue of class certification under the abuse of discretion standard. See Execu-Tech Bus. Sys., Inc. v. Appleton Papers Inc., 743 So.2d 19, 20 n. 1 (Fla. 4th DCA 1999). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). If, however, reasonable people could differ as to the propriety of the action taken by the trial court, then it cannot be said that the court abused its discretion. Id.
Pursuant to Florida Rule of Civil Procedure 1.220(a), four prerequisites must be satisfied before any claim or defense may be maintained on behalf of a class. The members of the class must be so numerous that separate joinder of each member is impracticable. Fla. R. Civ. P. 1.220(a)(1). The claim or defense of the representative party must raise questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class. Fla. R. Civ. P. 1.220(a)(2). The claim or defense of the representative party must be typical of the claim or defense of each member of the class. Fla. R. Civ. P. 1.220(a)(3). Lastly, the representative party must be able to fairly and adequately protect and represent the class members' interests. Fla. R. Civ. P. 1.220(a)(4).
Pursuant to rule 1.220(b), if the rule 1.220(a) criteria are satisfied, a court must also conclude that the claims or defenses are maintainable in a class action. The court may find that the prosecution of separate claims or defenses by or against individual class members would create a risk of either inconsistent or varying adjudications concerning individual class members which would establish incompatible standards of conduct for the opposing party or that the adjudications concerning individual class members would be dispositive of the interests of the other class members who are not parties to the adjudications or would substantially impair their interests. Fla. R. Civ. P. 1.220(b)(1)(A)-(B). If the class is not maintainable under rules 1.220(b)(1)(A) or (b)(1)(B), the class may still be certified if the party opposing the class has acted or refused to act on grounds generally applicable to all the class members, thereby making final injunctive or declaratory relief concerning the class as a whole appropriate. Fla. R. Civ. P. 1.220(b)(2). Furthermore, the class can be certified if the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each class member predominate over any question of law or fact affecting only individual class members, and class representation is superior to other available methods of adjudication. Fla. R. Civ. P. 1.220(b)(3).
The party seeking class certification has the burden of pleading and proving the necessary elements pursuant to rule 1.220, and the trial court has the obligation to conduct a rigorous analysis to determine whether the elements of rule 1.220 have been satisfied. Appleton Papers Inc., 743 So.2d at 21-22. Because Florida's class action rule is based upon Federal Rule of Civil Procedure 23, Florida courts may look to federal cases as *353 persuasive authority in their interpretation of rule 1.220. Concerned Class Members v. Sailfish Point, Inc., 704 So.2d 200, 201 (Fla. 4th DCA 1998).
In this matter, the trial court found that the rule 1.220(a) requirements were satisfied as the class consisted of more than 7,000 members, the easements were sufficiently similar to present common questions of law and fact, the class representatives' claims appeared typical, if not identical to those of the settlement class, and nothing suggested that the class representatives had not adequately represented the class members' interests. From our review of the record in this action, we find no error in these findings and, thus, hold that the trial court did not abuse its discretion in concluding that the rule 1.220(a) requirements were satisfied. See Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632, 637 (Tenn.1996) (holding that the trial court properly exercised its discretion in certifying a statewide class for property owners who filed suit against Sprint, alleging that the installation of the company's cable on railroad rights-of-way without the owners' permission constituted a taking and trespass).
Proceeding to the rule 1.220(b) requirements, the trial court, for purposes of the settlement, certified the class pursuant to rules 1.220(b)(1)(A), (b)(2), and (b)(3). Regarding the mandatory nature of the class, the trial court found, pursuant to rule 1.220(b)(1)(A), that permitting class members to opt out of the settlement class posed the impermissible risk of individual suits resulting in different final judgments. As PTC's director testified during the fairness hearing, differing adjudications regarding whether the fiber optic communications system could continue to be utilized would result in a lack of connectivity. Appellants aver that FPC would not encounter incompatible standards of conduct if class members were permitted to opt out from the class completely as appellees would not be placed in the position of being unable to comply with one judgment without violating the terms of another. We agree.
The phrase "incompatible standards of conduct," as found in both Federal Rule of Civil Procedure 23(b)(1)(A) and Florida Rule of Civil Procedure 1.220(b)(1)(A), has been interpreted to refer to a situation in which different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct. See 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1773 (2d ed.1986) (internal footnotes omitted). In order to satisfy the rules' criterion, a plaintiff must establish that individual adjudications could force the defendant to act in legally conflicting ways. See Hallaba v. Worldcom Network Servs. Inc., 196 F.R.D. 630, 643 (N.D.Okla.2000); see also Walker v. City of Houston, 341 F.Supp. 1124, 1131 (D.C.Tex.1971) (concluding that rule 23(b)(1)(A) "was designed to `obviate the actual or virtual dilemma which would ... confront the party opposing the class' when incompatible judgments would trap him in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another."). As one treatise has stated:
Under [rule 23(b)(1)(A)], it is not enough that separate litigation may result in inconsistent adjudications. Rather, the Rule explicitly requires that such adjudication impose incompatible standards of conduct on the party opposing the class. Accordingly, the mere possibility of varying or inconsistent adjudications in which a party may prevail against a putative class member in one case and lose in a second case to another such *354 class member, does not, standing alone, impose incompatible standards of conduct on the party in satisfaction of Rule 23(b)(1)(A). Rather, Rule 23(b)(1)(A) is satisfied only if inconsistent judgments in separate suits would place the party opposing the class in the position of being unable to comply with one judgment without violating the terms of another judgment.

5 James Wm. Moore et al., Moore's Federal Practice, § 23.41[2][a] (3d ed.1997) (internal footnotes omitted) (emphasis added).
For instance, in Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 60 (S.D.Ohio 1991), the plaintiffs requested class certification as to their claims regarding the Portsmouth Gaseous Diffusion Plant. The plaintiffs claimed that they had been exposed to radioactive materials and nonradioactive hazardous wastes that were emitted by the plant. Id. As to their request for rule 23(b)(1)(A) certification, the plaintiffs argued that all of their requests for remediation could only be handled by a single judicial order. Id. at 67. The court found that if multiple courts addressed such issues, they could well order the defendants to take actions that could not be performed consistently with each other, thus forcing the defendants to choose which orders to obey and which to disregard under threat of contempt. Id. The court also determined that if the plaintiffs could demonstrate an entitlement to relief, it would undoubtedly be in the form of a complex order, addressing many specific features of plant operation. Id. Thus, it was unlikely that two courts would tailor a remedial order in the same fashion, making it entirely conceivable that different remedial orders would contain incompatible provisions. Id. Therefore, the court certified the class pursuant to rule 23(b)(1)(A). Id.; see also Becher v. Long Island Lighting Co., 164 F.R.D. 144, 153 (E.D.N.Y.1996) (holding that separate cases could conceivably result in different courts reaching conflicting decisions regarding the defendant's employee pension plan).
While appellees argue that separate actions by class members could result in a lack of connectivity throughout the fiber optic system, this outcome, in contrast to the outcomes in both Boggs and Becher, would not present legally conflicting results that would prejudice appellees or raise concerns about inconsistent rulings within the judicial system. A judicial interpretation of a class member's easement in one circuit would not be legally inconsistent with a judicial interpretation of a separate easement in a different circuit even though the effect of such could be a lack of connectivity throughout the fiber optic system. Merely because different interpretations of the existing easements might result, such a situation would not place appellees in a dilemma of the sort contemplated by rule 1.220(b)(1)(A), as FPC would not be placed in the position of being unable to comply with one judgment without violating the terms of another judgment. See Moore, supra, § 23.41[2][a].
As such, because the facts of this case do not satisfy the rule 1.220(b)(1)(A) requirements, we hold that the trial court abused its discretion in certifying the settlement class pursuant to rule 1.220(b)(1)(A). See Hallaba, 196 F.R.D. at 644 (holding that the class could not be certified pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) because even if the defendants' fiber optic cable was trespassing on the plaintiffs' properties, and even if the defendants were forced to remove such cable, the outcome would not present legally conflicting results that would prejudice the defendants or raise concerns *355 about inconsistent rulings within the judicial system); see also Walker, 341 F.Supp. at 1131 (holding that, while independent adjudications could result in the defendants being ordered to refund certain class members' pension fund contributions and not others' contributions, such inconsistencies or uncertainties would not place the defendants in a dilemma of the sort contemplated by rule 23(b)(1)(A), for the varying adjudications would not preclude compliance with the judgment in each case).
Although the trial court erred in certifying the settlement class under rule 1.220(b)(1)(A), we find such certification error to be harmless as the trial court also certified the settlement class pursuant to rule 1.220(b)(2) for purposes of the class members' declaratory and injunctive relief claims and rule 1.220(b)(3) for purposes of the class members' damages claims. See Nat'l Union Fire Ins. Co. v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000) (holding that the test for harmful error in a civil case is whether, but for such error, a different result may have been reached). This divided certification was proper because it introduced the rule 1.220(b)(3) protections of personal notice and the opportunity to opt out for the damages claims. See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, 216 F.3d 577, 581 (7th Cir.2000). Rule 1.220(b)(2), like Federal Rule of Civil Procedure 23(b)(2), is applicable if the party opposing the class has acted or refused to act on grounds generally applicable to all class members, thereby making final injunctive relief or declaratory relief concerning the class appropriate. The rule 1.220(b)(2) certification was appropriate in the instant case because FPC acted or refused to act on grounds generally applicable to all class members.
Although the trial court's settlement class certification under rules 1.220(b)(2) and (b)(3) was proper, we must also determine whether the trial court erred in creating a mandatory class for purposes of declaratory and injunctive relief. Once a trial court certifies a class pursuant to rules 1.220(a) and (b), it must then determine whether class members will be permitted to opt out of the class. If a class is certified under rule 1.220(b)(3), class members must be given the right to opt out. Fla. R. Civ. P. 1.220(d)(1). If a class is certified under rules 1.220(b)(1) or (b)(2), the right to opt out is based upon whether "a showing is made that the notice [insofar as it advises of the right to opt out] is not required." Id. Florida Rule of Civil Procedure 1.220(d)(1) provides that:
If the court rules that the claim or defense shall be maintained on behalf of a class under subdivision (b)(3), the order shall also provide for the notice required by subdivision (d)(2). If the court rules that the claim or defense shall be maintained on behalf of a class under subdivision (b)(1) or subdivision (b)(2), the order shall also provide for the notice required by subdivision (d)(2), except when a showing is made that the notice is not required, the court may provide for another kind of notice to the class as is appropriate.
(emphasis added).
The "notice required by subdivision (d)(2)" contemplates class members' rights to opt out of the class by providing that, "[t]he notice shall inform each member of the class that ... any member of the class who files a statement with the court by the date specified in the notice asking to be excluded shall be excluded from the class...." Fla. R. Civ. P. 1.220(d)(2). See also Comm. Notes (1980 Amend.) ("Generally, the rule provides for ... notice to all members of the class, provisions for the members of the class to exclude themselves.... The notice requirements have *356 been made more explicit and stringent tha[n] those in the federal rule.").
Here, although the trial court certified the settlement class under rules 1.220(b)(1)(A) and (b)(2) for purposes of declaratory and injunctive relief, it created a mandatory class solely under rule 1.220(b)(1)(A). In the Final Judgment, the trial court set forth that, "the Settlement Class is properly maintained as a `mandatory' class under Rule 1.220(b)(1)(A).... [T]he purpose of the mandatory class is to avoid the disruption to the [communications] system that would be caused by such a break [in the system]." Thus, the creation of the mandatory class was based upon the trial court's reasoning that inconsistent standards of conduct would arise for FPC if class members were permitted to opt out for declaratory and injunctive relief. Yet, we have already concluded that the requirements under rule 1.220(b)(1)(A) were not satisfied in the instant case. The trial court's erroneous reasoning, which it used as the basis for the rule 1.220(b)(1)(A) class certification, was essentially the trial court's rule 1.220(d)(1) "showing" that the rule 1.220(d)(2) notice and right to opt out were not required. However, because the rule 1.220(b)(1)(A) requirements were not satisfied, the trial court could not certify a mandatory class under rule 1.220(d)(2) by relying on such requirements, as the rule 1.220(d) notice provisions only become pertinent after it has been determined that a claim or defense is maintainable on behalf of a class.
Although the trial court properly certified the settlement class for purposes of injunctive and declaratory relief under rule 1.220(b)(2), the record is devoid of the necessary rule 1.220(d)(1) showing as to why class members were not permitted to opt out of such a class. The trial court relied solely on the certification standard under rule 1.220(b)(1)(A) to support its determination that a mandatory class was necessary. Because this standard was inapplicable in the instant case, the trial court abused its discretion in creating a mandatory class. While appellants did not contend that rule 1.220(d) required that they be able to opt out of the rule 1.220(b)(2) class, the Final Judgment relied solely on rule 1.220(b)(1)(A) in making the settlement class mandatory. Had the trial court also relied upon rule 1.220(b)(2) in making the settlement class mandatory, we would be in a different posture with regard to our analysis. Accordingly, because the trial court's sole rule 1.220(d)(1) showing as to why the rule 1.220(d)(2) notice, and in turn the right to opt out for purposes of declaratory and injunctive relief, was improper, we reverse the Final Judgment and remand for further proceedings. We, therefore, decline to address appellants' third issue on appeal.
For the foregoing reasons, we conclude that the trial court had subject matter jurisdiction over this action. Although the trial court erred in certifying the settlement class under rule 1.220(b)(1)(A), such error was harmless as the trial court properly certified the settlement class under rule 1.220(b)(2) for purposes of declaratory and injunctive relief. However, because the trial court's sole reliance on the certification standard of rule 1.220(b)(1)(A), in creating a mandatory settlement class for purposes of declaratory and injunctive relief, was improper, we reverse the Final Judgment and remand for further proceedings.
REVERSED and REMANDED for further proceedings.
BENTON, J., CONCURS; POLSTON, J., CONCURS WITH WRITTEN OPINION.
*357 POLSTON, J., concurring with opinion.
Because I believe that the trial court erred in its declaration and approval of the settlement agreement, I concur with the majority that the final judgment should be reversed and the case remanded for further proceedings.

I. Subject Matter Jurisdiction
I agree that there is subject matter jurisdiction because the local action rule does not apply to these allegations. See Calhoun v. New Hampshire Ins. Co., 354 So.2d 882, 883 (Fla.1978)(ruling that subject matter jurisdiction is "tested by the good faith allegations, initially plead, and is not dependent upon the ultimate disposition of the lawsuit"); Republic National Bank of Miami v. United States, 506 U.S. 80, 88, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992)(holding that a change in circumstances does not divest the court from subject matter jurisdiction in an in rem proceeding); Clearwater v. Janet Land Corp., 343 So.2d 853, 854 (Fla. 2d DCA 1976)(stating that with "respect to jurisdiction over the subject matter, it is the matters set forth in the complaint together with the nature of relief sought which determine subject matter jurisdiction").
The gravamen of plaintiffs' complaint is that the defendants do not have authority under their existing easements' language to lease or license commercial fiber optic telecommunications facilities to third-parties without compensation to the plaintiffs as landowners. Plaintiffs do not dispute that the defendants have the authority under their existing easements to place fiber optic telecommunication facilities on the land for the defendants' own communication. Because the property's use by defendants as to third-parties and compensation to the landowners may be determined by the court without affecting the title to the property, the allegations are in personam rather than in rem. See Goedmakers v. Goedmakers, 520 So.2d 575, 579 (Fla.1988)(ruling that "many in personam actions involve real property" and that the presence of real property as an issue does not make it a local action; whether or not the action is local or transitory depends upon the underlying major question in the case); State, Dep't of Natural Resources v. Antioch Univ., 533 So.2d 869, 872 (Fla. 1st DCA 1988)(same); Greene v. A.G.B.B. Hotels, Inc., 505 So.2d 666, 667 n. 1 (Fla. 5th DCA 1987)(distinguishing in rem actions in which the land is the res from "actions in which the court can effectuate the object of the cause only indirectly by acting on the parties and where such in personam action merely involves land").

II. Class Certification
The trial court's rulings on class certification should be affirmed because the trial court did not abuse its discretion. As noted by the majority opinion, the class was certified as mandatory under Rule 1.220(b)(1)(A). A class may be certified under 1.220(b)(1)(A) if the court concludes that the prerequisites of 1.220(a) are satisfied and the prosecution of separate claims or defenses by or against individual members of the class would create a risk of "inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fla. R. Civ. P. 1.220(b)(1)(A).
The prerequisites of 1.220(a) have been satisfied. However, contrary to the majority, I believe that the trial court did not abuse its discretion by certifying the class as mandatory under 1.220(b)(1)(A). Because 1.220 is based on Federal Rule of Civil Procedure 23, we can consider federal law as persuasive authority in interpretation of the state rule. See International Longshoremen's Ass'n v. Fisher, 800 So.2d 339, 340 n. 1 (Fla. 1st DCA 2001); Toledo v. Hillsborough County Hosp. Authority, *358 747 So.2d 958, 961 n. 1 (Fla. 2d DCA 1999). The Advisory Committee Note to the 1966 Revision of Rule 23 indicates that a declaration of the rights and duties of landowners was specifically contemplated as an example of mandatory certification under 23(b)(1)(A). In re Dennis Greenman Securities Litigation, 829 F.2d 1539, 1545 (11th Cir.1987).
As noted by the trial court, Rule 23(b)(1)(A), providing for mandatory certification, "is applicable when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1773, at 434 (1986); see also 1 Herbert Newberg and Alba Conte, Newberg on Class Actions, § 4.08, at 4-26 (3d ed.1992)(stating that a suit that is a likely candidate for certification as a Rule 23(b)(1)(A) class would be one that "challenges the conduct or practices of defendants who are required by law or by practical circumstances to deal with all class members in the same way").
After an evidentiary hearing, the trial court found that the uncontradicted evidence showed that, absent a mandatory certification, there could be inconsistent adjudications in separate actions that would have the practical effect of not allowing defendant Florida Power Corporation to pursue a uniform course of conduct. The trial court specifically ruled that Florida Power will not be able to complete a continuous, interconnected fiber optic communications system if inconsistent adjudications occur. Accordingly, Florida Power will be prejudiced.
The practical necessity for the fiber optic communications system to be continuous and interconnected for the system to function forces Florida Power to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable. Therefore, the trial court did not abuse its discretion in certifying the class as mandatory. See White v. National Football League, 822 F.Supp. 1389, 1408-10 (D.Minn.1993)(certifying the class of professional football players bringing an antitrust class action against the NFL as mandatory, ruling that "[i]f individual players file separate actions seeking injunctive relief against NFL player restraints, there is a substantial risk of inconsistent or varying adjudications which would result in incompatible standards of conduct for the defendants;" the court noted that differing results in individual actions would impair the professional sports league's ability to pursue a continuing course of conduct "where pragmatic considerations" require that the defendants act in the same manner to all members of the class), aff'd, 41 F.3d 402 (8th Cir.1994); In re Telectronics Pacing Systems, Inc., 172 F.R.D. 271, 284-85 (S.D.Ohio 1997)(certifying a mandatory class because separate adjudications would impair the defendant's ability to pursue a single program); Schutte v. Maleski, 1993 WL 218898 (E.D.Pa.1993)(certifying a mandatory class because the declaratory ruling sought by the plaintiffs, if left to differing outcomes, would make it near impossible for defendants to implement one result because of the inherent conflict from disparate adjudications).
Relying on Hallaba v. Worldcom Network Services, Inc., 196 F.R.D. 630 (N.D.Okla.2000), the majority concludes that the lack of system connectivity does not present legally conflicting results that would prejudice appellees or raise concerns about inconsistent rulings within the judicial system. I disagree. Hallaba *359 brought causes of action for continuing trespass, unjust enrichment, and fraud, but not for a declaration of rights as in this case. Id. at 634. Moreover, in Hallaba, the court found that separate adjudication of the class members' claims would not create conflicting standards of conduct for the defendants. Id. at 644.
In Hallaba, the easements had differing language and were over numerous states with varying state law interpretations of their meaning. The court ruled:
The Court finds that separate adjudication of the putative class members' claims would not create conflicting standards of conduct for Defendants. The Court has already described the intensely factual and deed-specific nature of the inquiry necessary to determine if Defendants are trespassing. This inquiry is made more individual in nature by the need to apply the appropriate state law, which the Court has concluded differs in significant ways among the various states. This particularized inquiry means that the result for one plaintiff landowner would have very little impact on the result for a second plaintiff landowner, especially if that plaintiff's land is in a different state and/or if the railroad or pipeline obtained its interest in the right of way from that plaintiff (or his/ her predecessor in interest) by an individual rather than form deed. Because the facts and law will differ from plaintiff landowner to plaintiff landowner, the adjudication for each such plaintiff landowner in this case will likely be unique and will pose no threat of inconsistent adjudications of the sort contemplated by Rule 23(b)(1)(A).
Id. at 644.
The court noted that even if the defendants were forced to remove trespassing cable, there would not be legally conflicting results that would cause prejudice to the defendants or raise concerns about inconsistent rulings. In this case, only Florida law applies and there is not the same concern over the individual factual differences in the conveyances, so that a valid concern for legally conflicting results exists as found by the trial court. Therefore, Hallaba is not applicable.

III. Settlement Approval

A.
Appellant City of Altamonte Springs argues that the settlement agreement violates its ordinances which prohibit Florida Power's activities. The trial court ruled that the final judgment is declaring the scope of the class easements and the rights of the parties thereunder, and that it is not declaring what rights, if any, the City has under its ordinances. The City may address any violations in a different action, according to the trial court.
As stated by the trial court, the final judgment declares the scope of the easements and the rights of the parties thereunder as a matter of law. See ¶ 84 of the Final Judgment. By entering this legal declaration, I believe the trial court reached the merits of the action in error, but I would not reverse on that basis because appellants have not made this argument. See ¶ 27 of the Amended Settlement Agreement (requiring declaration as a condition of the settlement); Wainwright v. Kraftco Corp., 53 F.R.D. 78 (N.D.Ga.1971)(ruling that the trial court should not approve a class action settlement that was contingent upon a declaration by the court); City of New York v. Exxon Corp., 697 F.Supp. 677, 692 (S.D.N.Y.1988)(ruling that the court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute," quoting Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir.1974)); 32B Am.Jur.2d Federal Courts § 2128, at *360 499 (1996)(Rule 23(e) "clearly does not provide authority for the court to make declarations of rights that are to be conditions precedent to a settlement").
Although under these circumstances it is not reversible error for the trial court to make this legal declaration, the trial court improperly failed to consider the effect of the City of Altamonte Springs' ordinances. In reaching the merits of the meaning of the easements and the rights of the parties thereto, the trial court necessarily had to determine as a matter of law whether the language of the easement was ambiguous. I believe that the trial court implicitly determined that the easement language is ambiguous because the trial court's legal declaration cannot be determined from a plain reading of the easement's language. See, e.g., Akers v. Canas, 601 So.2d 305, 306 (Fla. 3d DCA 1992)("A reasonable and unambiguous restrictive covenant in a grant of easement will be enforced in accordance with the intent of the parties as expressed by the plain language and ordinary meaning of its terms.").
Because the easement is ambiguous, the intent of the parties is paramount and the court must ascertain and give effect to that intention. See Robinson v. Feltus, 68 So.2d 815, 816 (Fla.1953)(construing an easement, the Court noted that the easement language was ambiguous and that "the intent of the parties, which is paramount, must be ascertained by reference to the surrounding circumstances"); 20 Fla. Jur.2d §§ 41-42 Easements (2000). The trial court ruled that any violations of its ordinances could be considered by a different action and did not reach the issue of whether the ordinances reflected the intent of the City of Altamonte Springs at the time of the grant. Because the trial court erred by not addressing the ordinances in construing the language of the easement, I would reverse the trial court's declaration as a matter of law.
Even had the trial court not made the legal declaration on the merits, it erred in its approval of the settlement by not considering its legality with respect to the ordinances. See, e.g., Austin v. Hopper, 15 F.Supp.2d 1210, 1219 (M.D.Ala.1998)(regarding class action settlements, the court noted that "[b]esides evaluating the fairness of the settlement agreement, the court also has the duty to make sure that the settlement is not illegal or against public policy. Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir.1985)"); Bennett v. Behring Corp., 737 F.2d 982, 988 (11th Cir.1984)(affirming the trial court's ruling that class action settlement was not illegal under Florida state law); Grunin v. International House of Pancakes, 513 F.2d 114, 123 (8th Cir.1975)(stating that "a court cannot lend its approval to any contract or agreement that violates the antitrust laws"); In re Smith, 926 F.2d 1027, 1029 (11th Cir.1991)(stating that a settlement should not be approved if it contravenes a state or federal statute or policy).

B.
The appellants argue that the final judgment by the trial court improperly extends the easements beyond what was originally granted. I agree, and therefore would reverse the trial court's declaration and approval of the settlement. The rights as construed by the settlement agreement for the easement "shall continue even if electricity is no longer being transmitted over the electric transmission or distribution lines located on the easements, unless FPC [Florida Power] and/or its successors or assigns legally abandon(s) said easements." This easement interpretation gives Florida Power the ability to operate its fiber optic system for the sole purpose of leasing to third-parties and for as long *361 as it desires, even though it may not be operating electricity over the easement. Because the purpose of the easement was for electricity and communication related to the delivery of electricity, the construction of the easement improperly expanded the rights granted.
As stated in Walters v. McCall, 450 So.2d 1139, 1142 (Fla. 1st DCA 1984):
A general principle governing all easements is that "the burden of right of way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of initial acquisition." Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328, 330 (Fla.1954). In other words, the easement holder cannot expand the easement beyond what was contemplated at the time it was granted. See Star Island Associates v. City of St. Petersburg Beach, 433 So.2d 998 (Fla. 2d DCA 1983).
The trial court made no findings to reasonably justify an expansion of easement rights beyond those related to electricity. See Barasch v. Odio, 561 So.2d 1256, 1258-59 (Fla. 2d DCA 1990)(holding that the planting of tie poles from dock was not included in the rights granted by easement, therefore they had to be removed); 4 Ralph E. Boyer (Revision by William H. Ryan), Florida Real Estate Transactions § 110.12[2] (2001)(stating that if a grant of easement specifically states the uses or purposes for which the easement was created, the use of the easement must be confined to those purposes; the burden on the landowner must not be increased beyond what is reasonably necessary and contemplated at the time the easement is initially acquired, citing Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328 (Fla. 1954)).
In Crutchfield, the Florida Supreme Court held that the parties could not have intended that large-scale irrigation equipment be operated over the strips of land in question since such operations were then unknown. 69 So.2d at 330. Such a right of large-scale irrigation cannot be implied from prior permission to haul water in barrels over the land. Id. Likewise, the sole right of operating a fiber-optic system for lease to third-parties cannot be implied from prior permission to operate electricity and communication incidental to its operation.
I conclude that the trial court (i) properly exercised subject matter jurisdiction, (ii) did not abuse its discretion in certifying the class as mandatory, and (iii) erred in its declaration and approval of the settlement. Therefore, I concur with the majority that the final judgment should be reversed.