859 So.2d 1255 (2003)
Barbara S. EARNEST, Appellant,
v.
AMOCO OIL COMPANY, Appellee.
No. 1D02-4936.
District Court of Appeal of Florida, First District.
November 25, 2003.
*1256 Sanford Svetcov of Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Francisco, CA.; Bonnie E. Sweeney and Stacie L. Somers of Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA; Gene D. Brown, Tallahassee; Douglas Bowdoin of Beusse, Brownlee, Bowdoin & Wolter, P.A., Orlando; and J. Craig Bourne, Orlando, for Appellant.
William R. Mabile, III of Fuller, Johnson & Farrell, P.A., Tallahassee, and Steven J. Harper, P.C. and Wendy L. Bloom of Kirkland & Ellis, Chicago, IL, for Appellee.
VAN NORTWICK, J.
Barbara S. Earnest appeals an order denying her motion for certification of a class. We have jurisdiction pursuant to *1257 rule 9.130(a)(6), Florida Rules of Appellate Procedure (2003). Because we find no abuse of discretion in the trial court's ruling that Earnest failed to establish that the statistical analysis she proposed to use at trial would show class-wide injury and that questions of law and fact common to the class predominate over individual questions, we affirm.
Earnest, an accountant and Leon County resident, filed suit in the circuit court for Leon County against Amoco Oil Company alleging violations of the Florida Motor Fuel Marketing Practices Act, section 526.301, et seq., Florida Statutes, and the Florida Deceptive and Unfair Trade Practices Act, section 502.201, et seq., Florida Statutes. Earnest alleged below that Amoco violated these statutory provisions when, in 1994, it discontinued distributing its petroleum products in Leon County to independent distributors and/or station owners, commonly known as "jobbers" in the trade, and limited distribution of its products exclusively to company-owned Amoco stations. Earnest has contended that the decision to discontinue distribution to jobbers adversely affected economic competition among gasoline retailers operating in Leon County. Upon the filing of her complaint, Earnest sought certification as a class representative of purchasers of Amoco gasoline in Leon County subsequent to Amoco's cessation of distribution to jobbers.
The trial court conducted an extensive hearing on the motion for class certification. The principal issue relating to the class certification was whether questions of law or fact common to appellant's claims and to each member of the class "predominate over any question of law or fact affecting only individual members of the class, and [that] class representation is superior to other available methods for the fair and efficient adjudication of the controversy." Fla. R. Civ. P. 1.220(b)(3). The trial court determined that appellant's evidence submitted in support of class certification was not sufficient to show that the representative has proof to establish injury to class members and, thus, class certification was denied.
Pursuant to Florida Rule of Civil Procedure 1.220(a), there are four prerequisites which must be satisfied before any claim or defense may be maintained on behalf of a class: (1) the members of the class must be so numerous that separate joinder of each member is impracticable, rule 1.220(a)(1); (2) the claim or defense of the representative party must raise questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, rule 1.220(a)(2); (3) the claim or defense of the representative party must be typical of the claim or defense of each member of the class, rule 1.220(a)(3), and (4) the representative party must be able to fairly and adequately protect and represent the class members' interests, rule 1.220(a)(4).
Further, under rule 1.220(b), upon satisfaction of the criteria set forth rule 1.220(a), a court must also conclude that the claims or defenses are maintainable in a class action. See Seven Hills, Inc. v. Bentley, 848 So.2d 345, 348 (Fla. 1st DCA 2003). Subsection (b) requires a showing that (1) individual prosecutions would establish incompatible standards of conduct or individual adjudications would be dispositive of the interests of other members of the class who are not subject to the adjudications; (2) the party opposing class certification has acted, or has refused to act, on grounds generally applicable to all members of the class; or (3) the claim or defense is not maintainable under subsection (b)(1) or (b)(2), but that questions of law or fact common to the claim or defense of each member of the proposed class is *1258 predominant over any question of law or fact affecting only individual members of the class. Fla. R. Civ. P. 1.220(b).
Earnest, as the movant for class certification, bore the burden of establishing all of the requirements of rule 1.220, and the trial court is to subject a request for class certification to "rigorous analysis." See Seven Hills, Inc. v. Bentley, 848 So.2d at 352 (quoting Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc., 743 So.2d 19, 22-22 (Fla. 4th DCA 1999)). In conducting its "rigorous analysis," the trial court may look beyond the pleadings and, without resolving disputed issues, determine how disputed issues might be addressed on a classwide basis. Stone v. Compuserve Interactive Services, Inc., 804 So.2d 383, 387 (Fla. 4th DCA 2001), citing Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir.2000).
Earnest sought certification under rule 1.220(b)(3), which requires that the questions of law and fact common to the claim predominate over any question of law or fact affecting only individual members. Although the fact of injury may be susceptible of generalized proof,
[a]s to the amount of damages, at least some individualized treatment will be required. "[T]he predominance test really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis."
Transamerican Refining Corp. v. Dravo Corp., 130 F.R.D. 70, 74 (S.D.Tex.1990)(quoting 7A Wright, Miller & Kane, Federal Practice and Procedure, § 1777 at 518-19 (1986)). The role of the trial court in determining whether common questions predominate was well explained in Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA 1999):
To certify a class, rule 1.220(b) requires not only that common questions exist, but that those common questions predominate over individual questions. Rule 1.220 also requires a class action to be manageable and superior to other proceedings. To determine if the requirements of Rule 1.220 have been met, a trial court must envision how a class action trial would proceed.
Under this analysis, the trial court must determine whether the purported class representatives can prove their own individual cases and, by so doing, necessarily prove the cases for each one of the thousands of other members of the class. If they cannot, a class should not be certified.
At the class certification stage, the plaintiff is not required to prove class-wide impact. See In re Domestic Air Trans. Antitrust Litig., 137 F.R.D. 677, 692 (N.D.Ga.1991). Instead, a plaintiff is required to "adequately demonstrate[][her] ability to show impact as to each individual by the use of generalized proof." Id. Said another way, at the class certification stage,
[p]laintiffs must show that antitrust impact can be proven with common evidence on a classwide basis; Plaintiffs need not show antitrust impact in fact occurred on a classwide basis.... [W]ith respect to the damages requirement, ... the plaintiffs [must] show they could compute damages through the use of common proof.
In re Polypropylene Carpet Antitrust Litigation, 178 F.R.D. 603, 618 (N.D.Ga.1997)(emphasis deleted). If using statistical analysis, a plaintiff is required to prove that there exists a methodology for proving class-wide impact by predominately common evidence and that individual *1259 inquiries will not overwhelm the common ones. Air Trans. Antitrust Litig., 137 F.R.D. at 692; see also In Re Polypropylene Carpet Antitrust Litig., 996 F.Supp. 18, 22 (N.D.Ga.1997).
Earnest sought to establish all of the prerequisites for class certification through the testimony of a single expert, Keith Leffler, an associate professor of Economics at the University of Washington and, as the record reflects, a frequent expert in class action litigation. Professor Leffler testified that he proposed to use a regression analysis[1] to establish a class-wide injury, but he candidly admitted that he had not actually performed such an analysis. He testified in part:
[I]t's possible the analysis would show that the percentage of Amoco jobbers does not impact the pricing. In other words, I[,] going into it[,] don't know the answer. So it may be that the answer is that we stop there. The analysis is performed and I'd have to have a call with you someday, that wouldn't be a pleasant call, to say I don't find an impact. However, if, in fact, the regression analysis does find a statistically significant relationship between the proportion of Amoco jobbers in a market and the prices paid in that market at Amoco stations, that doesn't yet show class-wide impact. That shows impact on average for the class members, certainly. It shows on average the people that purchased Amoco gasoline would have paid less if there would have been jobber presence in Leon County. But it doesn't answer the question of: is that a reason to expect that all class members would be impacted. So we wouldn't be done yet.
Professor Leffler further testified that he did not know what the evidence would show as to how many jobbers would have entered the Tallahassee market during the proposed class period, but that the number of jobbers in the market is often relevant to the price of gasoline paid by consumers.
In the order on appeal, the trial court found that Professor Leffler's proposed regression analysis was speculative and had not yet been tested on any data relating to the class. Thus, the trial court concluded that Earnest had not established that she could prove injury to the proposed class through Dr. Leffler's proposed regression analysis. In so ruling, the trial court found the case before it analogous to A & M Supply Co. v. Microsoft Corp., 252 Mich.App. 580, 654 N.W.2d 572 (2002), a case where Professor Leffler also appeared as an expert for the party seeking class certification. As was the trial court in the case on review, the reviewing court in A & M Supply was troubled by the fact that, as of the time of the class certification hearing, Professor Leffler had not actually performed the statistical and economic analysis required to determine class damages. Id. at 586. Thus, Professor Leffler offered only "vague promises for future analysis" which "failed to bridge the gap between economic theory and the reality of economic damages...." Id. at 603. Although A & M Supply was an action for *1260 damages sustained by indirect purchasers, while the case at bar concerns direct purchasers, the plaintiff in each case was nevertheless required to "set forth a viable method for proving actual damages on a class-wide basis." Id.; see also Execu-Tech Business Systems, Inc., 743 So.2d at 22 (holding that plaintiffs seeking class certification are required to demonstrate a methodology which would show injury to members of the class in order to satisfy the predominance element of rule 1.220).
We agree with the trial court that Earnest's proposed method of determining injury to members of the proposed class was vague and theoretical and failed to provide the bridge between economic theory and common economic damages. "There must be a sound basis in fact, not supposition, that the requirements of the class action rule have been satisfied." Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995). While Earnest was not required to prove at the class certification stage of the litigation the allegations in her complaint that Amoco violated the Florida Motor Fuel Marketing Practices Act and the Florida Deceptive and Unfair Trade Practice Act, we find no abuse of discretion by the trial court in ruling that Earnest did not sufficiently demonstrate a methodology that would show class injury or establish that questions of law or fact common to the proposed class predominate over questions of law or fact affecting only individual members of the class. See Fla. R. Civ. P. 1.220; Seven Hills, 848 So.2d at 352.
Accordingly, the challenged order denying class certification is AFFIRMED.
BARFIELD and BENTON, JJ., concur.
NOTES
[1] At the hearing on the motion for class certification, Professor Leffler explained "regression analysis" as "a statistical method through which [one] attempt[s] to explain or understand the relationships among variables." A federal appellate court has defined regression analysis as the "use of an algebraic formula to express the influence of one or more independent variables on the average level of a dependent variable [as well as] the computational procedure through which the terms of this formula are estimated." E.E.O.C. v. General Telephone Co. of Northwest, Inc., 885 F.2d 575, 577 n. 3 (9th Cir.1989)(quoting D. Baldus & J. Cole, Statistical Proof of Discrimination, 357 (1980))(parentheses omitted).