912 So.2d 21 (2005)
THE ST. JOE COMPANY, Appellants,
v.
Rawlis LESLIE, Deborah Crosby, et al., Appellee.
No. 1D04-5462.
District Court of Appeal of Florida, First District.
July 29, 2005.
Rehearing Denied September 7, 2005.
*22 David M. Wells, Donald D. Anderson, and Bryan S. Gowdy, of McGuire Woods LLP, Jacksonville, for Appellant.
J. Michael Papantonio, Steven A. Medina, and Kathleen P. Toolan, of Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A., Pensacola; Robert G. Kerrigan, of Kerrigan, Estess, Rankin & McLeod, LLP, Pensacola; Lawrence Keefe, Michelle Anchors, and Vickie Gesellschap, of Anchors, Foster, McInnis & Keefe, P.A., Fort Walton Beach; Steven R. Andrews, and Tracy P. Moye, of Andrews & Moye, P.A., Tallahassee, for Appellee.
HAWKES, J.
Appellant, The St. Joe Company (St. Joe), dumped various paper mill waste products, such as wood chips, tree bark, lime grits, oil boiler ash, and slag onto locations throughout an area called "the sock." The properties were eventually sold to numerous individuals and contractors. Appellees are property owners who allege injury to their individual parcels, both directly and indirectly, as a result of the dumping. Appellees' motion for class certification was premised on the following counts: (1) continuing trespass; (2) continuing nuisance; (3) unjust enrichment; (4) strict liability; (5) negligence; and (6) statutory liability under section 376.313(3), Florida Statutes (providing a civil cause of action for damages suffered as a result of a prohibited discharge or other pollutive condition; no negligence need be proven). The trial court certified a class of property owners who own parcels within "the sock," and parcels outside "the sock." It is from this non-final order that Appellant appeals.

I. FACTUAL AND PROCEDURAL HISTORY
At the class certification hearing, various expert reports were submitted into evidence, but the reports differed as to whether there was evidence of soil and/or water contamination within the defined class area.

A. Expert opinions
Specifically, the Florida Department of Environmental Protection (DEP) issued a report indicating that pollution from mill waste was widespread, though nothing indicated each parcel included in the class *23 was contaminated. The report also indicated the pollution was usually found in low concentrations. Only a few of the sampled locations revealed contamination levels that exceeded DEP's risk-based residential soil guidelines and drinking water standards. DEP did not find arsenic in the groundwater, but one test well did contain excessive levels of lead. DEP recommended further assessment of groundwater and soil within the class area.
Another expert, Dr. George Flowers, testifying on behalf of the plaintiffs, opined in his report that 46% of his soil samples revealed excessive levels of arsenic, while 3% revealed excessive levels of lead. Based on a computer program he developed, in conjunction with the random physical sampling, Flowers concluded contamination could be found "throughout" the area, and there was a risk of ongoing groundwater contamination. Significantly, although Flowers testified the contamination could be found "throughout" the area, he did not opine that each class member's parcel was contaminated.
Flowers also opined that lime grits, found in some areas of the certified class, were not likely to be a source of contamination, and he admitted his computer program predicted higher levels of arsenic than what his physical samples revealed. Furthermore, Flowers did not look for alternative explanations for the contamination.
Two other experts, Michael McLaughlin and Glen Millner, opined they did not believe there was a contamination problem. In fact, Millner opined no hazardous waste had even been dumped in the area. Both experts also opined there could be alternative sources of arsenic and lead contamination, including: paint, fertilizer, mulches, pesticides, insecticides, herbicides, batteries, wood preservatives, used motor oil, residue from leaded gasoline, and chicken feed.

B. Class representatives' testimony
Several of the class representatives testified they either witnessed or were told about Appellant dumping the mill waste in the defined class area. However, none of the class representatives testified that dumping occurred on their own land, or that their land was contaminated. Neither did the class representatives testify the value of their land had decreased because of the alleged dumping. Some of the class representatives, however, did admit using some of the items that allegedly could cause arsenic and lead contamination.

C. Property value testimony
One expert, Dr. Thomas Jackson, opined in his report that in order to be grouped together for class-action purposes, the properties would need to be the same property type, approximately the same age, have the same concentration of hazardous substances above regulatory levels, and there would need to be only one source of contamination. Jackson was of the opinion that the subject properties were too diverse to analyze together on a common, class-wide basis, due to multiple ownership issues, multiple dates of value, and different environmental concerns.
At the class certification hearing, Dr. Jack Friedman opined that after reviewing Jackson's report, he believed any diminution in value of the properties could be ascertained by using a mass appraisal approach. However, Friedman admitted he had not been asked to perform a mass appraisal, and had not checked with the local property appraiser to determine the feasibility of such an approach. Although Friedman asserted he could have performed a regression analysis based on *24 Jackson's report, he failed to do so prior to his testimony.
Ultimately, the trial court certified the class after finding there were common questions pertaining to liability, causation, and remedies.

II. PREDOMINANCY AND CLASS CERTIFICATION
We review class certification orders for abuse of discretion. See Seven Hills v. Bentley, 848 So.2d 345, 352 (Fla. 1st DCA 2003).
Beyond numerosity, commonality, typicality, and adequacy, courts must determine whether the questions of law and fact common to the claims and defenses of the representative party and class members predominate over questions of law and fact affecting only individual class members. See id. at 352; Fla. R. Civ. P. 1.220(b)(3) (2004). "Common issues . . . predominate if they `ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir.2004) (citation omitted). Each party must be able to prove their own individual case, and in so doing, prove the case of the other unnamed class members. See Earnest v. Amoco Oil Co., 859 So.2d 1255, 1258 (Fla. 1st DCA 2003). If Plaintiffs must still present a great deal of individualized proof or argue individualized legal points to establish most or all of the elements of their claims, class certification is not appropriate. See Klay, 382 F.3d at 1255; see also Terry L. Braun, P.A. v. Campbell, 827 So.2d 261 (Fla. 5th DCA 2002) (holding that where both liability and damages depend on individual factual determinations, claims may only be determined on individual basis).

A. Failure to prove elements of claims
Here, none of the class representatives testified that dumping occurred on their property, much less that their property was contaminated. Nor did the class representatives testify that their property had been physically harmed or that their property values had decreased (as opposed to speculation about their property values). Thus, Appellees failed to prove how the class representatives could prove their own trespass, unjust enrichment, negligence, strict liability, or nuisance claims, thereby proving the claims of the unnamed class members.[1]

B. "Stigma" damages
Moreover, because no proof was adduced that any of the class representatives' *25 land was contaminated, the concept of "stigma" damages is inapplicable. Cf. Finkelstein v. Dep't of Transp., 656 So.2d 921, 924 (Fla.1995) (recognizing concept of "stigma" damages as they apply to property which is, in fact, contaminated).
However, even if the concept of "stigma" damages is applicable, the class representatives would be required to prove "that there exists a methodology for proving class-wide impact by predominately common evidence. . . ." Earnest, 859 So.2d at 1258. Merely providing testimony that a statistical analysis could be done, without proving that such an analysis was actually performed and was scientifically valid, is insufficient. See id. at 1260. Such an insufficiency is present in this case because although testimony was provided that a mass appraisal or regression analysis could be done, there was no evidence that one was actually performed, or, even if performed, that it would be accepted in the relevant property appraiser community as valid.[2] Thus, Appellees failed to prove there was an existing methodology to prove "stigma" damages on a class-wide basis.

C. Causation
Claims for trespass, negligence, nuisance, and strict liability all require proof that the defendant caused the pollution resulting in damages. See Aramark Uniform and Career Apparel, Inc. v. Easton, 894 So.2d 20, 23-24 (Fla.2004). Because evidence was produced that numerous other substances or items existed that could cause lead and arsenic contamination, the issue of causation would likely vary with each class member. In fact, the class representatives' own testimony reflected that some representatives used pressure-treated wood, while others used pesticides. Where alternative sources of liability are an issue, class certification is inappropriate. See Boughton v. Cotter Corp., 65 F.3d 823 (10th Cir.1995). Furthermore, Appellees' own expert, Dr. Flowers, opined that lime grits were likely not a source of contamination. Thus, for any class member whose property only contains lime grits, causation could not be established.
Even under section 376.313, Florida Statutes (2004), which does not require proof of causation, Appellees would not prevail. See § 376.313, Fla. Stat. (requiring only that plaintiff "plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred"); Aramark Uniform and Career Apparel, Inc., 894 So.2d at 24. Here, although DEP reported excessive levels of pollution in some samples, there was no evidence the samples were taken from the same area where the class representatives witnessed dumping. Nor was there evidence that the waste, which the class representatives saw being dumped, exceeded DEP's standards. Finally, Dr. Flowers' testimony that lime grits were not a likely source of contamination, would preclude this statutory cause of action for those property owners whose parcels only contained lime grits. Thus, Appellees failed to prove how each class representative would be able to prove his or her own claim, thereby proving the claims of the unnamed class members.
Because individualized factual determinations will be necessary to determine whether a class member's property is contaminated and, if so, what caused the contamination, the trial court abused its discretion *26 by finding that common issues predominate. Therefore, we
REVERSE the certification order and REMAND for proceedings consistent with this opinion.
BARFIELD, and POLSTON, JJ., concur.
NOTES
[1] To sustain a trespass claim, each class representative would have to prove Appellant or Appellant's mill waste entered onto the class representative's property. See M.F. v. State, 864 So.2d 1223 (Fla. 1st DCA 2004).

Likewise, the unjust enrichment claim was predicated on the dumping of hazardous waste, and the failure to properly control, remove, or dispose of it.
Negligence claims can only be sustained when a plaintiff proves property damage, and strict liability and nuisance claims require physical harm, rather than just diminution in value. See Stephenson v. Collins, 210 So.2d 733, 737-38 (Fla. 1st DCA 1968) (Rawls, J. dissenting) (regarding negligence claims), decision quashed on other grounds by, 216 So.2d 433 (Fla.1968); Monroe v. Sarasota County School Bd., 746 So.2d 530 (Fla. 2d DCA 1999) (same); Great Lakes Dredging and Dock Co. v. Sea Gull Operating Co., 460 So.2d 510 (Fla. 3d DCA 1984) (regarding strict liability claims); Adams v. Star Enters., 51 F.3d 417, 423 (4th Cir.1995) (collecting cases and determining nuisance claim could not be sustained based solely on diminution in value). But see Peters v. Amoco Oil Co., 57 F.Supp.2d 1268, 1286 (M.D.Ala.1999) (interpreting Great Lakes Dredging as not requiring physical contact as an element of strict liability claims; also permitting negligence and nuisance claims to proceed based on diminution in value theory).
[2] See Brim v. State, 695 So.2d 268 (Fla.1997) (noting Florida utilizes the test set forth in Frye v. U.S., 54 App.D.C. 46, 293 F. 1013 (1923), which requires that evidence be sufficiently tested and accepted by the relevant scientific community).