561 So.2d 1256 (1990)
Steven T. BARASCH and Deborah D. Barasch, His Wife, Mark Speeler and Heritage Docks, Inc., Appellants,
v.
Carlos E. ODIO and Cecilia V. Odio, His Wife, Appellees.
No. 89-01379.
District Court of Appeal of Florida, Second District.
May 18, 1990.
*1257 Margot Pequignot of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, for appellants.
R. Timothy Peters of R. Timothy Peters, P.A., Clearwater, for appellees.
FRANK, Judge.
The combatants in this case have presented an issue that has vexed mankind since the dawn of time  a disagreement between contentious neighbors as to the extent of their real property rights. The appellees, Carlos and Cecilia Odio, are owners of waterfront property in a four-lot subdivision on Clearwater Harbor. The subdivision consists of two waterfront and two adjacent inland lots, one of which is owned by the appellants, Steven and Deborah Barasch. The Baraschs and the Odios trace title to their respective properties to Edgewater Construction, Inc. The Baraschs' deed includes the following easement:
Together with a 12 foot restricted nigress and egress easement to the established seawall over the Northerly 6 feet of Parcel 3 and the Southerly 6 feet of Parcel 2. With right and privilege to erect and enjoy full usage of a dock on the extension Westerly of said described easements, said privilege to be shared with Owner of Parcel 1 (emphasis supplied).
The Odios' deed includes the submerged land adjacent to their property.
In 1971 the then-owners of the four parcels constructed a dock in accordance with the easement and collectively they bore the cost. The dock is eight feet wide and its north edge lies off the north boundary of the easement six feet into and over the Odios' underwater land. Subsequently, one of the inland owners approached the Odios' predecessor in title, Mallory, and procured authorization to build catwalks extending northward or perpendicular to the dock. The catwalks remain on the Odios' property but a northerly extension at the end of the dock was removed at the Odios' request before they purchased their property. The land owners have always used the dock for its intended purpose  to moor boats. The Odios, however, constructed a dock projecting from their property and do not use the commonly owned dock.
The present conflict arose sometime after the Baraschs began to moor a 28-foot boat at the common dock. The Baraschs had requested permission from the Odios to embed a tie pole in their submerged land at a point some 26 feet north of the common *1258 dock. The Odios agreed, and the Baraschs promised that they would remove the tie pole upon the Odios' request. The Baraschs used the tie pole to moor their 28-foot boat outward from the common dock and did so continuously from the summer of 1984 until late in 1986 when it was removed for maintenance. In the fall of 1987, after Mr. Odio had twice inadvertently struck the pole while maneuvering his boat in and out of his own dock, he had the tie pole removed at his expense without consulting the Baraschs. The Baraschs, in February of 1988, reinstalled the tie pole without Odio's permission and, using the services of marine contractors, also installed davits and davit motors on the dock to facilitate mooring of the boat, which was returned to the dock in the spring of 1988.
After the Baraschs failed to remove the tie pole, davits, and the boat upon request, the Odios sued the Baraschs, marine contractor Mark Speeler, and Speeler's company, Heritage Docks, for trespass, ejectment, and unlawful detention of real property, seeking damages as well as removal of the boat, tie pole, and davits. After a non-jury trial, the trial court entered an amended final judgment, unfortunately devoid of findings, in which he concluded that docking a boat on the navigable water over the Odios' submerged land was "unreasonable under the circumstances." The trial court directed removal of the tie pole and all other encroaching items, which are described in the amended final judgment as "any item that extends in whole or in part across the boundary of the subject legally described easement area." Finally, the trial court ordered the Baraschs to pay taxable costs of $356 and damages in the amount of $1,140.00, representing rental for the Baraschs' unauthorized use of the dock. We affirm in part and reverse in part.
Following an exhaustive review of the record, as well as the pertinent law, little of which exists, and plumbing the murky depths of this matter, we have determined that the trial court's order sweeps too far. It is a fact that the Baraschs and the other inland owners, under the terms of the express easement, own the right to "enjoy full usage of a dock." This right was, without question, an important consideration to the Baraschs when they purchased their lot. Under no possible interpretation of the easement can it be said that "full usage of a dock" does not include the mooring of a boat there. Such usage is evident from the plain meaning of the word "dock" and from the custom of the property holders beginning with the moment the dock was erected. The direct testimony of all the involved persons was that the intent of the easement was to authorize the docking of boats by the inland as well as the waterfront owners. Moreover, the Odios acquired their property with full knowledge that the easement existed and in fact attempted to define in writing the rights of all concerned in an agreement prior to his purchase of the property, but the Baraschs did not sign the document in the belief it limited their right to full enjoyment of the privileges conveyed by the easement.
The trial court erred when it narrowly construed the extent of the easement. Obviously, any boat moored upon the north side of the dock will encroach to some degree upon the Odios' property. Nevertheless, the dock was contemplated and intended for that purpose by the parties when the easement was created. The applicable principle of law concerning the extent of an easement is stated in Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328, 330 (Fla. 1954):
... the burden of a right of way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of the initial acquisition... . "Every easement carries with it by implication the right, sometimes called a secondary easement, of doing what is reasonably necessary for the full enjoyment of the easement itself ... [but] the right is limited and must be exercised in such reasonable manner as not injuriously to increase the burden upon the servient tenement ..." (emphasis in original; citations omitted).
Although the docking of the Baraschs' boat was an anticipated and reasonable *1259 use of the easement, the planting by them of a tie pole 26 feet away from the common dock and into the Odios' submerged land was a substantial encroachment upon the Odios' rights for which the Baraschs have offered no legal justification. The placement of the davits and motors to facilitate the docking of a boat, however, consists of "doing what is reasonably necessary for the full enjoyment of the easement itself," and was not an encroachment upon the Odios' interests. The removal of those devices from the dock should not have been ordered. Finally, because the Baraschs were entitled to keep a boat at the dock, the awarding of damages to the Odios based upon "slip rental" was totally without foundation.
We realize that the Baraschs will have some difficulty in mooring a 28-foot boat to the dock, absent the tie pole, but this is the type of problem best resolved amicably by neighbors rather than in a court of law.
The amended final judgment is affirmed to the extent that it awards the Odios costs in the amount of $356.00 and requires the Baraschs to remove the tie pole. In all other respects the amended final judgment is reversed and this matter is remanded for further proceedings consistent with this opinion.
SCHOONOVER, A.C.J., and PATTERSON, J., concur.