SWANSON, J.
Appellants seek review of a non-final order determining that venue of this inverse condemnation lawsuit will remain in the Circuit Court for Leon County. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const, (granting to district courts of appeal jurisdiction to “review interlocutory orders ... to the extent provided by rules adopted by the supreme court”); Fla. R. App. P. 9.130(a)(3)(A) (providing for appeal to the district courts of appeal of non-final orders that “concern venue”). For the reasons stated hereinafter, we deny appellants’ request that we address this interlocutory appeal as a petition for writ of prohibition under Florida Rules of Appellate Procedure 9.100(a) and 9.030(b)(3), and we affirm the trial court’s ruling that appellants waived their argument of improper venue by failing to raise the issue before serving a responsive pleading to appellees’ Third Amended Complaint.
Appellant Board of Trustees of the Internal Improvement Trust Fund (“the Board”), headquartered in Leon County, Florida, is charged with the responsibility of managing all state-owned lands with the authority to sue and be sued. See § 253.02, Fla. Stat. Appellant Florida Department of Environmental Protection (“the Department”), also headquartered in Leon County, is the state agency responsible for the implementation of the “Dennis L. Jones Beach and Shore Preservation Act,” Part I, chapter 161, Florida Statutes (“the Act”). See § 161.031, Fla. Stat. At *1168 the time suit was filed, appellees Tammy N. Alford, Slade Lindsey, and Janet Frost owned property in Walton County, Florida, fronting the Gulf of Mexico. In 1995, Hurricane Opal critically eroded a 6.9-mile swath of beaches and dunes along the Gulf of Mexico within the City of Destín (“the City”) and Walton County (“the County”), including appellees’ property. As a result, the Department initiated a process under the Act, which culminated, on July 30, 2003, in the filing of an Application for a Joint Coastal Permit and Authorization to Use Sovereign Submerged Lands. The application proposed the restoration through renourishment of damaged shore line through the dredging of sand from eastern Okaloosa County, Florida, which was then deposited on the affected beaches. Essential to this process was the establishment of the area’s mean high water line and the erosion control line in order to determine the boundary between publicly owned land and the privately owned upland properties.
After the Department filed a notice of intent to issue the permit, two entities, Save Our Beaches, Inc. (a not-for-profit corporation representing real property owners in Okaloosa County), and Stop the Beach Renourishment, Inc. (a not-for-profit corporation representing real property owners in Walton County), along with six individual property owners, including ap-pellees Alford and Lindsey, instituted a formal administrative hearing challenging the resulting draft permit. Stop the Beach Renourishment, Inc., filed a separate petition challenging the Walton County erosion control line established by the Board. The ensuing litigation wound its way up to the United States Supreme Court on the esoteric issue of whether the Florida Supreme Court’s decision — that the Act did not unconstitutionally deprive the property owners’ littoral rights without just compensation — itself effected a taking of the property owners’ littoral rights contrary to the Fifth and Fourteenth Amendments to the United States Constitution. The Supreme Court concluded it did not. See, Walton Cnty. v. Stop the Beach Renourishment, Inc., 998 So.2d 1102 (Fla.2008), aff'd sub nom., Stop the Beach Renourishment, Inc. v. Fla. Dep’t of Envtl. Prot., 560 U.S. 702, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010).
In the meantime, on August 27, 2004, Save Our Beaches, Inc., and Stop the Beach Renourishment, Inc. (“the plaintiffs”), filed a complaint in the Circuit Court for Leon County for declaratory and injunctive relief, naming the Board, the Department, the County, and the City as defendants. In the complaint, the plaintiffs challenged the Act “because it confiscates constitutionally protected littoral property rights without providing due process of law or just and full compensation.” Specifically, plaintiffs sought a declaration that sections 161.141 and 161.191, Florida Statutes (2004), are unconstitutional, and requested the trial court to enjoin the establishment of the erosion control line pri- or to eminent domain proceedings being instituted by the defendants to acquire “the protected littoral rights” of the plaintiffs.
On February 3, 2005, the initial plaintiffs filed an amended complaint, adding as co-plaintiffs, Flamingo Investment Properties, LLC, Patrick Ross, and Dennis Jones, along with appellees Alford and Lindsey. On March 7, 2005, in accordance with the trial court’s order, the plaintiffs filed their Second Amended Complaint, alleging that sections 161.141, 161.191, and 161.161, Florida Statutes (2004), are unconstitutional, both facially and as applied. At the request of the Board, the Department, and the County, and over the objection of the plaintiffs, on June 21, 2007, the case was abated pending resolution of the above- *1169 referenced administrative litigation. During the three-year period of abatement, the Department and the County recorded the erosion control line.
On December 16, 2010, the plaintiffs filed their Motion for Leave to Amend Complaint and Motion to Add and Drop Parties (adding appellee Frost as a party, and dropping Save Our Beaches, Inc., Stop the Beach Renourishment, Inc., Flamingo Investment Properties, LLC, Patrick Ross, and Dennis Jones as parties). The amendment was necessitated by events that had occurred during the period of abatement, including the recordation of the erosion control line and the filing of the Supreme Court’s opinion resolving the constitutional issues spawned by the administrative challenge to the permit. As a consequence, appellees’ Third Amended Complaint deleted the prior claims demanding that appellants institute eminent domain proceedings, and, instead, added a claim for inverse condemnation, alleging that “[b]y approving the Walton ECL [erosion control line], which was recorded and is located landward of the pre-Opal MHWL [mean high water line], the Board permanently took the real property located between the Walton ECL and pre-Opal MHWL of [plaintiffs] for public use.” The complaint went on to allege that “[n]oneof the plaintiffs ha[s] been paid just compensation for the property taken by the Board.”
On December 28, 2012, the trial court entered its Order Lifting Abatement, Granting Plaintiffs’ Motion for Leave to Amend Complaint and Motion to Add and Drop Parties, and Denying Defendants^] Motion for Summary Judgment as Moot. The trial court determined that the claims in the Third Amended Complaint relate back to the Second Amended Complaint pursuant to Florida Rule of Civil Procedure 1.190(c), and that no new cause of action was being alleged:
The asserted conduct relevant to the prospective takings in the Second Amended Complaint and the retrospective takings claims in the Third Amended Complaint arises out of the “same general factual situation.” Specifically, the County sought a permit to undertake a beach restoration project, [the Department] issued a permit and approved the ECL that was surveyed and recorded by the County, the Board took title to land seaward of the ECL, and the conveyance of title to the Board was a taking of Plaintiffs’ property in violation of the Florida and federal constitutions. Plaintiffs are not asserting a new cause of action — the Second Amended Complaint alleges a cause of action for a taking caused by the beach restoration project as does the Third Amended Complaint. The difference between the claims is that the Second Amended Complaint seeks prospective and in-junctive relief to prevent the taking from occurring and the Third Amended Complaint seeks relief for the taking that did occur (due to the passage, of time). Thus, the Plaintiffs’ “cause of action” has not changed; it was and still is a “taking” that arises out of the “same general factual situation” (i.e., the beach restoration project). Such claims necessarily relate back to the Second Amended Complaint. Ron’s Quality Towing, Inc. [v. Se. Bank of Fla.], 765 So.2d [134,] 135 [ (Fla. 1st DCA 2000) ]; Armiger [v. Associated Outdoor Clubs, Inc.], 48 So.3d [864,] [ ] 870-72 (Fla. 2d DCA 2010).
In sum, the amended claims asserted in the Third Amended Complaint allege specific facts — which have now occurred — that the claims in the Second Amended Complaint generally alleged would occur. Ron’s Quality Towing, *1170 Inc., 765 So.2d at 136 (An “amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim.” (citation omitted) (internal quotations omitted)). Further, allowing amendment furthers the salutary ends of the relation back doctrine. Armiger, 48 So.3d at 870-72. Accordingly, the Third Amended Complaint relates back to the claims previously asserted by Plaintiffs and amendment is proper under Florida Rule of Civil Procedure 1.190(c).
(Emphasis Added.)(Footnote 3 omitted.)
In footnote 4 of the opinion, the trial court noted that appellants had “raised improper venue as an issue.” It ruled, nonetheless, that appellants waived that issue by failing to raise it before serving their responsive pleading, as required by Florida Rule of Civil Procedure 1.140(b). See generally Three Seas Corp. v. FFE Transp. Svcs., Inc., 913 So.2d 72, 75 (Fla. 3d DCA 2005); MacDonald v. MacDonald, 444 So.2d 531, 532 (Fla. 1st DCA 1984). We affirm the ruling. As was made abundantly clear in the above-quoted portion of the trial court’s order, the Third Amended Complaint does not raise a new claim, as appellants urge. The core cause of action — a taking — has remained unchanged from the inception. See generally Turner v. Trade-Mor, Inc., 252 So.2d 383, 384 (Fla. 4th DCA 1971) (“The test of whether an amendment offered by a party sets forth a ‘new cause of action’ is not whether the cause of action stated in the amended pleading is identical to that stated in the original. Rather, the test is whether the pleading as amended is based upon the same specific conduct, transaction or occurrence between the parties upon which the plaintiff tried to enforce his original claim.”). Accord Ron’s Quality Towing, Inc. v. Se. Bank of Fla., 765 So.2d 134, 135-36 (Fla. 1st DCA 2000). Moreover, venue is proper in the Circuit Court of Leon County as being the location of appellants’ headquarters. See Levy Cnty. v. Diamond, 7 So.3d 564, 566 (Fla. 1st DCA 2009) (“A state agency has a right to be sued in the county where it maintains its headquarters.”).
Appellants ask, in the alternative, that we treat the trial court’s interlocutory order as invoking this Court’s original jurisdiction under Florida Rules of Appellate Procedure 9.100(a) and 9.030(b)(3), to issue a writ of prohibition to quash the interlocutory order as an attempt by the trial court to act outside its subject-matter jurisdiction. Appellants’ argument is premised on their contention that inverse condemnation actions are in rem. In other words, “causes of action the object of which is action on the property or title to real property are in rem and required by the ‘local action rule’ [LAR] to be brought in the county where the land lies.” State, Dep’t of Natural Res. v. Antioch Univ., 533 So.2d 869, 871 (Fla. 1st DCA 1988). That is, “the LAR governs subject-matter jurisdiction, not venue.... It follows that a petition for writ of prohibition, and not a direct appeal, is the proper vehicle for obtaining review....” Antioch, 533 So.2d at 872.
Our colleague, in his dissenting opinion, accepts appellants’ premise that the current cause of action for inverse condemnation is an in rem proceeding in the same manner as was the cause of action in Antioch. In Antioch, the complaint sought to enforce a reverter clause based on deed restrictions and to quiet title to the property in Antioch University, the residual beneficiary of an estate in land. Thus, based on the above-quoted rule, we issued the writ of prohibition, quashed the trial *1171 court’s order, and remanded for transfer to the circuit court with territorial jurisdiction over the real property involved. Notwithstanding, we paused to caution: “The simple involvement of real property in an action does not render that action in rem and subject to the LAR.” Id. See also, Seven Hills, Inc. v. Bentley, 848 So.2d 345, 350-51 (Fla. 1st DCA 2003) (citing Antioch, but concluding that “because title was not the underlying major question in this action, and because the necessary result of the Final Judgment did not cause one of the parties to gain or lose an interest in real estate, the local action rule is inapplicable”). Rather, “with ‘respect to jurisdiction over the subject matter, it is the matters set forth in the complaint together with the nature of relief sought which determine subject matter jurisdiction.’” Bentley, 848 So.2d at 357 (Polston, J., concurring) (quoting Clearwater v. Janet Land Corp., 343 So.2d 853, 854 (Fla. 2d DCA 1976)). The complaint in Antioch raised matters clearly antithetical to the object of the current inverse condemnation cause of action, which seeks full monetary compensation for the Board’s alleged taking of appellees’ property, not a change in title. Id.
We acknowledge the general view that “[ijnverse condemnation jurisprudence, like the direct exercise of eminent domain power, is based to a large extent on in rem concepts,” Florida Rock Industries, Inc. v. United States, 18 F.3d 1560 (Fed.Cir.1994), but we cannot accept appellants’ and the dissent’s invitation to turn a generally held concept into a rule of law and agree that the nature of an inverse condemnation claim “demands” that it be treated like an eminent domain proceeding — which, as an action in rem, must be litigated in the county where the land is located. “Inverse condemnation is a cause of action by a property owner to recover the value of property that has been de facto taken by an agency having the power of eminent domain where no formal exercise of that power has been undertaken.” Osceola Cnty. v. Best Diversified, Inc., 936 So.2d 55, 59-60 (Fla. 5th DCA 2006) (emphasis added). Appellants have provided no controlling case law to support their alternative theory, which runs counter to the weight of authority treating this issue as one concerning venue. See, e.g., Pinellas Cnty. v. Baldwin, 80 So.3d 366 (Fla. 2d DCA 2012) (affirming the circuit court’s denial of the county’s motion to dismiss the complaint for improper venue, where the property was located in a different county, and because plaintiffs complaint for inverse condemnation invoked the sword-wielder exception to the county’s home venue privilege); Levy Cnty. v. Diamond, 7 So.3d 564 (Fla. 1st DCA 2009) (holding the Trustees of Internal Improvement Trust Fund and the Department of Environmental Protection could voluntarily waive the home venue privilege and consent to the trial of the property owner’s inverse condemnation action in the county where the property was located rather than the county where the state agencies were headquartered); Fla. Dep’t of Agric. & Consumer Servs. v. City of Pompano Beach, 829 So.2d 928 (Fla. 4th DCA 2002) (holding that venue in an inverse condemnation action seeking compensation from the Department of Agriculture for citrus trees destroyed as part of a citrus canker eradication program was proper in the county where the trees were located); Volusia Cnty. v. Atl. Int’l Inv. Corp., 394 So.2d 477 (Fla. 1st DCA 1981) (holding, in an action for inverse condemnation consolidated with a contract action, the county was entitled to be sued where it maintained its principal headquarters, and the proper remedy was not dismissal but for the trial court to transfer the cause of action to the circuit court for the county). *1172 Thus, the question of venue, and not subject-matter jurisdiction, was the correct inquiry in the present case, and the trial court properly ruled that appellants waived their argument of improper venue by failing to raise the issue before serving a responsive pleading. Law and logic does not dictate otherwise.
In sum, we DENY appellants’ request that we treat this interlocutory appeal as a petition for writ of prohibition, and AFFIRM the trial court’s interlocutory order on review.
VAN NORTWICK, J., concur.
THOMAS, J., dissents with opinion.